## STIRN v. UNITED STATES (No. 2201).[1]

COST OF PRODUCTION, PARAGRAPH L, SECTION III, TARIFF ACT OF 1913.

Raw silk was purchased in the United States, shipped to France, and processed and returned to the original purchaser.   The silk as imported had no market value.   The French correspondent hired some of the processing done and did some itself.   In ascertaining the cost of production under paragraph L, Section III, tariff act of 1913, items of profit *paid* by the French correspondent should be included, but those *charged* by it should not.   Items of general expense *paid* by it should be included, and those *charged* by it, if as much as 10 per cent, must be taken in lieu of the 10 per cent estimate provided by the paragraph.   The cost of the silk when it reached the French

[1] T. D. 39981.

correspondent, plus what was paid by it for processing, plus 10 per cent of the sum of these, plus the cost of the processing done by it, plus its own charge for general expenses (since it exceeded the statutory 10 per cent) was the cost of production; and to this the paragraph directs the appraiser to add not less than 8 nor more than 50 per cent.

United States Court of Customs Appeals, January 19, 1924.

APPEAL from Board of United States General Appraisers, G. A. 8549 (T. D. 39180).

[Reversed.]

*John Durrell Smith* (*John Giblon Duffy* of counsel) for appellant.
*William W. Hoppin*, Assistant Attorney General (*John A. Kemp*, special attorney, of counsel), for the United States.

[Oral argument October 2, 1923, by Mr. Duffy and Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BARBER, Judge, delivered the opinion of the court:

This case involves the validity of a reappraisement made by a board of three general appraisers of certain dyed thrown silk, known as "organzine." The appeal to reappraisement was taken by the importer.

The merchandise is dutiable under paragraph 313 of the tariff act of 1913 and was imported from Lyons, France.

It is undisputed that there was no market value as defined by law for the silk in the condition in which it was imported, and that it was incumbent upon the appraising officers to ascertain its dutiable value in the manner pointed out under the first part of paragraph L of Section III of said act.

It appears that J. B. Martin & Co., of Norwich, Conn., an American corporation, purchased raw silk in the United States and shipped it to J. B. Martin of Lyons, France, a French corporation, to be there manufactured into silk yarns, dyed, rolled on beams and returned to Martin & Co. of Norwich. The throwing is a twisting process which converts the raw silk into yarns, at which time it takes the name of organzine. The dyer dyes it according to specifications furnished in this case by Martin & Co. of Norwich. The raw silk from which the imported yarns were made, is known as silk in the gray. The reason why the merchandise has no market value in its imported condition is that when silk yarns have been dyed to meet the demands of one particular manufacturer they are not generally suitable for the purposes of another.

After receiving the raw silk, which in this case constitutes the material to be manufactured, the Lyons corporation procured one party to throw or twist it, another to dye it, but itself rolled it on beams and prepared it for the return shipment.

It is agreed, for the purposes of this case and the appraisement board found, that Martin of Lyons is to be regarded as the manufacturer in France of the imported merchandise. The appellant here is said to be the agent of Martin & Co. of Norwich.

There are numerous reappraisements in this case involving the same questions, but we refer, as do counsel, to but one, understanding that the rule as to that may govern the others.

The invoice showed the following items: Ecru, 66.65 francs; rolling, 10.55 francs; dyeing, 20.65 francs.

The unit of weight or quantity to which these items apply is a kilogram, and "ecru" refers to the processed silk yarns.

It is agreed that the 66.65 francs included the cost of the raw silk, the insurance thereon, the expense of transporting it from this country to Martin in Lyons, and the amount the latter paid for throwing the silk.

The undisputed evidence shows the actual cost of the throwing and dyeing operations, and that both the thrower and dyer added thereto, in their charges, an item for general expenses and an item for profit, both of which were included in the amounts paid to them respectively by Martin of Lyons.

The item for rolling the silk is, according to the undisputed evidence, made up in the following manner: The actual cost, composed of items for transportation, labor, and power, 7.57 francs; general expenses, 1.55 francs; and profit, 1.43 francs.

We quote the relevant part of the opinion of the appraisement board. "The figures in detail of the cost of throwing such silk and the dyeing thereof, including the items for general expenses and profits of the throwster and dyer, are not disputed and must therefore be accepted as given   There appears, however, to be some conflict as to the basic figures for the raw silk   The witness Sabran,- in answer to direct interrogatory 23, describes himself as the purchaser of the raw silk, and states the prices he paid therefor at different periods; whereas in answer to cross-interrogatory 12 he states that the raw silk belonged to J. B. Martin & Co., of Norwich, Conn., and that J. B. Martin, of Lyons, did not purchase or pay for the same. The figures stated by this witness as his purchase prices for the raw silk and the prices thereof stated in the invoice vary, and are uniformly lower than the invoice prices. This feature of the witness's testimony we think must be disregarded and the invoice declarations as to value accepted.

"Following what we understood to be the ruling of the court in the Stirn case, supra, we find the market value of each item of the ecru shown by the invoice to have been beamed to be the value stated in the invoice plus the cost of throwing, dyeing, and rolling, plus 10 per cent for general expenses and 8 per cent for profit on the

ecru and cost for rolling, and the market value of each item of the ecru shown by the invoice to be hanked to be the value stated in the invoice plus the cost of the throwing and dyeing, plus 10 per cent for general expenses and 8 per cent for profit on the ecru. This conclusion leads to varying findings of market value in different groups of appeals, attributable to differences in the invoice values of the raw silk resulting from different market values on the dates of shipment. The finding of the ultimate market value of each item is noted on the record in each case."

It is agreed by counsel that this finding, when applied to the typical entry we have been considering, yields the following reappraisement: Ecru per kilo, 66.65 francs; rolling, 10.55 francs; add 10% and 8%; add dyeing 20.65 francs.

The importer protested the liquidation of the collector founded on this appraisement. The protest was overruled by the classification board and the case is here on importer's appeal.

In substance, the importer's contention is that the appraisement was contrary to law because the item of 66.65 francs found to be the market value of the ecru included a sum greater than the actual cost of the raw silk delivered to Martin of Lyons, and also an item of general expense and another of profit charged by the throwster. Also that the cost of dyeing, appraised as entered at 20.65 francs, included an item of general expense and profit charged by the dyer and that the item of 10.55 francs for rolling included an item of general expense and profit to Martin of Lyons in performing that service.

It is claimed by counsel for both sides that the material facts here are substantially the same as those in Stirn & Co. *v.* United States (10 Ct. Cust. Appls. 17; T. D. 38257). It may be noted that the record in that case is incorporated in the record here and that additional testimony in the instant case was heard by the appraisement board which, among other things, tended to show in detail all the facts respecting the actual cost of the silk when it reached Martin of Lyons and the general expenses and profits involved in handling and processing it there.

The determination of the issues here must be governed by the applicable provisions of said paragraph L. They are that the cost of production at the place of manufacture and at the time of exportation to the United States shall be ascertained and shall include:

(*a*) The cost of materials.

(*b*) The cost of fabrication.

(*c*) All general expenses to be estimated at not less than 10 per cent covering each and every outlay of whatsoever nature incident to such production, together with the expense of preparing and putting up such merchandise ready for shipment.

(*d*) An addition of not less than 8 nor more than 50 per cent upon the total cost thus ascertained.

And the statute declares that in no case shall such merchandise be appraised at less than the total cost of production as thus ascertained.

The decisive question here is whether the above provisions have been adhered to by the appraising board. We think they have not. It was the duty of that board to ascertain the cost of the silk when it reached the hands of Martin of Lyons, the manufacturer, as at that time it was the material to be fabricated. Instead of finding such cost the appraisement board found and has stated it has found the *market value* of the ecru. . . .

We do not agree with the importer's contention that the item of general expense and profit charged to Martin of Lyons by the throwster and dyer was not properly included in ascertaining the cost of these operations. The amount paid for such operations was a part of the cost of fabrication to the manufacturer, Martin of Lyons. But the item 10.55 francs for rolling, including as it did the item of profit, was more than the actual cost of that operation to the manufacturer, hence the profit of 1.43 francs could not be included in the cost of the rolling, and then be subjected to a further increase of 8 per cent, as was done in this case.

We recapitulate a lawful method of ascertaining the cost of production of the imported merchandise.

The cost of the silk when it was first delivered to Martin of Lyons should be ascertained. This would be what was paid therefor in this country plus the cost of transportation, insurance, and the other charges if any (none are claimed) incident to such delivery.

The cost of fabrication would include the amounts paid to the throwster and dyer. To the cost of material ascertained, as already pointed out, should therefore then be added what was paid for throwing and dyeing and to the aggregate amount thus ascertained 10 per cent should be added for general expenses prior to the time the yarn was rolled.

As already appears the undisputed evidence accepted by the appraisement board shows that the cost of the rolling operation to Martin of Lyons, the manufacturer, was 7.57 francs and its general expenses incident thereto 1.55 francs. This 1.55 francs should be accepted as the actual general expense of that operation. It exceeds the 10 per cent provided by the statute for estimated general expenses and, having been found to be true, must be taken as the general expense of that operation instead of an estimated 10 per cent therefor.—Austin, Baldwin & Co. *v.* United States (7 Ct. Cust. Appls. 186; T. D. 36505).

Therefore, to the aggregate cost of material and fabrication ascertained as above pointed out, the sum of 7.57 francs plus 1.55 francs; that is, 9.12 francs, should be added and to the resulting amount, the total cost of production, the appraisers were authorized and required by the statute to add not less than 8 nor more than 50 per cent thereof, and then to appraise the importation at not less than the amount thus ascertained. The failure of the board to follow the law and adopt this method or its equivalent in reappraising the merchandise, renders its appraisement illegal and void.

The classification board did not consider this aspect of the case, but apparently based its judgment in overruling the protest upon the view that there was conflicting evidence before the appraisement board as to the cost of the ecru, as to which the judgment of that board must be regarded as final. With that conclusion upon such an assumed state of facts we do not disagree but, as already pointed out, the method of ascertaining the cost of production adopted by the appraisement board, not being in accordance with the statute, opens it to a successful challenge by the importer.

The judgment of the Board of General Appraisers is *reversed.*