CHARLES STOCKHEIMER, INTER-MARITIME FORWARDING CO., INC. *v.* UNITED STATES (No. 4878)

UNITED STATES *v.* CHARLES STOCKHEIMER, INTER-MARITIME FORWARDING CO., INC. (No. 4879) [1]

United States Court of Customs and Patent Appeals, March 29, 1957

*Allerton deC. Tompkins* for importers.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*,

[1] C. A. D. 642.

Chief, Customs Section (*Daniel I. Auster*, trial attorney, of counsel), for the United States.

Lamb & Lerch (*John G. Lerch* and *David A. Golden* of counsel) *amici curiae*.

[Oral argument February 12, 1957, by Mr. Tompkins, Mr. Auster, and Mr. Lerch]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

These are cross-appeals from a judgment of the United States Customs Court, Second Division, in a reappraisement proceeding, A. R. D. 65, involving two importations of cashmere sweaters from Scotland. The importation included in Reappraisement No. 223280–A was exported on May 18, 1951 while that included in Reappraisement 223281–A was exported on August 24, 1951.

It was stipulated by the parties that no foreign value, export value or United States value existed for the involved merchandise as those terms are defined in section 402 (c), (d) and (e) of the Tariff Act of 1930 as amended, and that cost of production as defined in section 402 (f) of the Act is the proper basis for appraisement. The parties further agreed and stipulated as to all elements of such cost of production except the cost of materials, namely, cashmere yarn, of which the sweaters are made. The essential facts from which the cost of the yarn is to be computed have also been stipulated, but there is disagreement as to the basis on which the computation is to be made. The difficulty arises from the fact that the yarn cannot be purchased for immediate delivery but must be ordered from six to twelve months in advance. Five possible bases for computing the cost of the yarn which are suggested in the stipulation may be paraphrased as follows:

6. The price actually paid by the producer of the sweaters for the yarn delivered at normal times and under normal conditions and used during the course of a normal production period for the manufacture of the imported sweaters. Since yarns of different ages were used, this price involves a weighted average of the purchase prices of such yarns and is referred to as a "costed" price.

7. The price at which, on the date when manufacture of the imported sweaters commenced, in the usual course of business, cashmere yarn of the kind used was freely offered on the market, for future delivery. Yarn ordered at that time could not have been obtained in time to be used in those sweaters. No purchases of cashmere yarn were made at that time by the producer of the sweaters.

8. The price paid by the producer for cashmere yarn in the last order placed prior to the date when manufacture of the imported sweaters commenced in the usual course of business. Such yarn could not have been delivered in time to be used in those sweaters.

9. The price paid by the producer for the last suitable cashmere yarn delivered prior to the date when manufacture of the sweaters commenced in the normal course of business.

10. The price at which suitable cashmere yarn could last have been purchased so that the purchase could be delivered by the time of commencing manufacture as referred to in the preceding paragraph. No purchases of such yarn were made at that time by the producer of the imported sweaters.

The decision of this case depends upon the interpretation of section 402 (f) of the Tariff Act of 1930, the pertinent portion of which is as follows:

(f) Cost of Production—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business; * * *

The appraiser fixed the cost of the yarn on the basis of the computation defined by paragraph 7 above, i. e., market price for future delivery, at the time of commencing manufacture; and the Government contends here that such basis is correct. On appeal for reappraisal, a single customs judge overruled the appraiser and held the proper basis for computing the cost to be that set forth in paragraph 8; namely, the last price paid by the producer prior to commencement of manufacture, for suitable yarn, to be delivered in the future, Reap. Dec. 8437. The decision and judgment of the single judge were affirmed by the Customs Court in the judgment before us. The importers here contend, inter alia, that the proper basis for establishing cost is that given in paragraph 6, i. e., actual price paid for the yarn used, computed on a weighted average basis. In the amicus curiae brief the position is taken that the proper basis in determining the cost here in issue is the actual price paid for the yarn used in the imported sweaters.

The single judge and the Appellate Division of the Customs Court, relying on such cases as *United States* v. *F. W. Woolworth Co.*, 26 C. C. P. A. (Customs) 33, T. D. 49576 and *United States* v. *European Trading Co.*, 27 C. C. P. A. (Customs) 289, C. A. D. 103, which hold that there may be a distinction under some circumstances between cost and value, were apparently of the opinion that the cost of materials in section 402 (f) must be based upon some actual purchase made by the producer of the imported merchandise.

Section 402 (f) provides for a cost of production based upon "The cost of materials * * * at a time * * * which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business." Obviously the quoted language refers to the *latest* time which would permit such production, since if the reference were to *any* time sufficiently early to permit production, it would be wholly indefinite. The section, therefore, fixes cost of materials with respect to a definite time, and without reference to who the purchaser may be or whether a purchase is actually made.

No doubt if the producer had actually made a purchase of materials

at the time specified by the section, the price paid for it would fix the statutory cost of materials. If he did not do so however, and that is the case here, it becomes necessary to choose between the price actually paid by the producer for his last purchase *prior* to the specified time, and the price for which he might have made a purchase *at* the specified time. We are of the opinion that the second of those alternatives must be selected.

It is pointed out in the brief for the Government that the language here under consideration is substantially the same as that of section 206(1) of the Antidumping Act of 1921, H. R. 2435, and that the report of the Committee on Finance to the Senate with respect to that section said:

> The purpose of this definition is to create a constructive foreign-market value based on the cost of material and labor at a time preceding the date of shipment of the imported merchandise which would ordinarily permit the manufacture or production of such merchandise in the usual course of business. It is not limited to the actual cost of the imported merchandise.

It is not necessary to determine whether the cost of production provided for by section 402 (f) of the Tariff Act of 1930 is technically a "constructive foreign market value," but it is to be noted that all the alternatives in section 402 relate to values; namely, foreign value, export value and United States value.

With respect to the contention of the amicus curiae that the cost under section 402 (f) should be based on the actual price of the specific materials used in the imported merchandise, it may be noted that such an interpretation would render the statement in that section relative to time, and the reference to "similar merchandise," wholly superfluous. It is not reasonable to suppose that Congress would have employed the elaborate language of section 402 (f) with respect to time if the intended meaning were merely that the actual cost of materials should be employed. The foregoing remarks also apply to the so-called "costed price" of paragraph 6 above, which involves merely a method of arriving at an amount for the cost of the materials actually used when it is not possible to trace any particular part of the material into a particular piece of merchandise.

In the decisions of the lower tribunals reliance is placed on *United States* v. *F. W. Woolworth Co., supra; United States* v. *European Trading Co., supra;* and *Stirn* v. *United States*, 12 Ct. Cust. Appls. 42, T. D. 39981 as supporting the proposition that cost "must be fixed or positive, i. e., a price paid. It cannot be an indefinite amount, such as a quotation or an 'offering' price." The cited decisions appear to indicate that as between a price actually paid at a given time and a price in the open market at the same time, the former should be selected in determining cost. In the instant case, however, a choice must be made between market price at the time specified in the section under consideration, and a price actually paid at some other

time. Under such circumstances we are of the opinion, for the reasons above stated, that the market price should govern. That conclusion eliminates the standards proposed in paragraphs 6, 8, and 9, above, which are based on purchases at times other than that fixed by section 402 (f).

It remains to be determined whether the cost should depend upon the price at which the yarn was freely offered, for future delivery, at the time when manufacture of the sweaters was commenced, or upon such offered price on the last date when the yarn could have been purchased in time for delivery on the date when such manufacture was commenced.

As we view section 402 (f) it is designed to approximate as closely as is feasible the actual cost of producing the merchandise if it were manufactured as expeditiously as could be done in a normal manner for delivery on the date of export. This would necessarily entail ordering the materials at such a preceding time that they would be available long enough prior to the export date to permit manufacture in the normal manner. That appears to be the clear intent of the language of the section. The price on the date when manufacture was commenced, at which yarn might have been ordered for delivery six months or more later, can have no bearing on the cost of the imported merchandise, since it would have been impossible to use yarn ordered on that date in making such merchandise.

In the brief for the Government, reliance is placed on the decisions in *White Lamb Finlay, Inc.* v. *United States*, 29 C. C. P. A. (Customs) 199, C. A. D. 192 and *E. H. Corrigan* v. *United States*, 40 C. C. P. A. (Customs) 171, C. A. D. 514 which hold that prices quoted for future delivery may properly be considered in determining values. We are of the opinion, however, that those cases are distinguishable from the present one since the sections there involved related to value rather than cost and defined the value as a price at which merchandise was freely offered for sale at the time of exportation. The cited decisions hold that an offer of sale for future delivery may be considered in fixing such value. In the instant case, however, we are of the opinion that the language used in section 402 (f) clearly contemplates a cost on the basis of materials which could actually have been used in a manufacture commencing at the time specified, and that an offer to sell for delivery after that time would not be pertinent.

The importers, among the fourteen additional and alternative assignments of error respectively relied upon by them, also assert as a separate ground for the reversal of the judgment appealed from that the Customs Court made the following errors of law and fact:

5. In not finding and holding that the costs of cashmere yarn, such as that used in producing the sweaters involved herein, at a time preceding the dates of exportation of the merchandise in question, which would ordinarily permit the manufacture of these particular sweaters within the usual production periods

therefor, are as follows, based on prices for soonest possible yarn delivery prior to commencement of sweater production:

| Reappraisement | Price per pound (British sterling) | Record Reference (Stipulation "B") |
| --- | --- | --- |
| 223280–A | 71/6 | Par. 10, Item 9 of Schedule A. |
| 223281–A | 84/5 | Par. 10, Item 9 of Schedule B. |

With respect to the price of the imported yarn as of the date when it could last have been purchased in time for use in the manufacture of the sweater production here in issue, that is, the minimum preceding purchasing period of the yarn delivery which would ordinarily permit the manufacture or production of the merchandise under consideration, the Appellate Division, on the basis of the quoted stipulation and cited exhibits, further found and held with respect to paragraph 10:

Cashmere yarn producers frequently make a number of shipments of yarn over an extended period of time (shipments taking place over a period from six to twelve months after an order is placed) to fill a single order from a cashmere sweater producer for cashmere yarn. That the price of cashmere yarn (of the same kind as used in the production of the specified imported sweaters) that could last have been purchased by the producers of the specified imported sweaters so that the first yarn shipment against this purchase could be delivered in time for use in the manufacture of the specified imported sweaters, as well as the date when the latest purchase of said yarn could have been made so that the first yarn shipment against this purchase could be delivered in time for use in the manufacture of the specified imported sweaters, are set forth in item (9) of the attached Schedules A and B. (Soonest yarn delivery possible prior to 3/9/51—On 9/9/50 @ 71/6 per pound as to reappraisement 223280–A, and Soonest yarn delivery possible prior to 5/24/51—On 11/24/50 was 84/5 per pound as to reappraisement 223281–A.) [Last parenthesis quoted from schedules A and B.]

We are of the opinion that the exception to the entered judgment of the Customs Court defined by the assignment of error numbered 5 hereinbefore set forth is well taken. We accordingly hold that in the instant case, the proper cost of materials is that fixed on the basis of paragraph 10 above enumerated, namely 71/6 British sterling per pound for the merchandise involved in Reappraisement 223280–A; and 84/5 British sterling per pound for that involved in Reappraisement 223281–A.

For the reasons given, the decision of the Customs Court is *reversed* and the case is *remanded* for further proceedings consistent with this opinion.

JACKSON, J., Retired, recalled to participate herein in place of COLE, J., absent because of illness.