# CASES ADJUDGED IN THE UNITED STATES COURT OF CUSTOMS APPEALS.

## STIRN *v.* UNITED STATES (No. 1967).[1]

1. PLEADING—JUDGMENT.

Relief not asked for will not be granted in this court.

2. PARAGRAPH L, SECTION III, TARIFF ACT OF 1913—COST OF PRODUCTION—APPRAISEMENT.

Silk in the gray was purchased in the United States and shipped to France, there treated by certain preliminary manufacturing processes and returned to the United States to be used in the manufacture of fabrics. It was shown that there was no market for such processed silk in either France or the United States. Accompanying the merchandise were invoices showing the various items of charge made for the processing and preparing of the silk. Upon these invoices were items of general expenses and profits, which were, however, less than 10 per cent and 8 per cent, respectively, of the outlay of every nature incident to production, which are the minimum additions permitted by paragraph L, Section III, tariff act of 1913, to be made for such items. The claim that the Board of United States General Appraisers proceeded upon a wrong principle of law in making additions, since these additions had already been made in the invoices, can not be sustained; and their decision adding 10 per cent and 8 per cent of the invoice values for general expenses and profits, respectively, is affirmed.

*United States Court of Customs Appeals, February 2, 1920.*

APPEAL from Board of United States General Appraisers, G. A. 8218 (T. D. 37861) and Abstract 42887.

[Affirmed.] [2]

*John Giblon Duffy* (*John Durrell Smith* of counsel) for appellant.

*Bert Hanson,* Assistant Attorney General (*Frank P. Wilson,* special attorney, of counsel), for the United States.

[Oral argument Dec. 17, 1919, by Mr. Duffy and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Dyed thrown silk and dyed spun silk yarns, imported for J. B. Martin & Co., Norwich, Conn., from Lyons, France, for the manufacture of velvets, and entered by the clearance agents of that concern, were appraised by the local appraiser at the invoice value, plus 8 per cent added for manufacturer's profit.

On appeal to reappraisement the appraised value as fixed by the local appraiser was sustained. On final appeal to the board of three general appraisers there was added to the invoice value of all thrown silk yarns not only 8 per cent for manufacturer's profit, but 10 per cent for general expenses, and the collector of customs imposed duty on the goods at that valuation. No appeal seems to have been taken

---

[1] T. D. 38257 (38 Treas. Dec., 68).

[2] Reporter's note: See next to last paragraph of opinion.

from the reappraisement of the general appraiser adding 8 per cent to the invoice value of the spun silks.

The importer protested that the addition of 8 per cent and 10 per cent was illegal, and in effect that the local appraiser, the general appraiser, and the board of three general appraisers, acting as appraisers, proceeded upon a wrong principle in making any additions.

It appears from the record, and is found by the appraisers, that there was no market for dyed silk yarns in France, the country of exportation. Manufacturers of silk fabrics in France and the United States purchase silk in the gray and have the silks thrown and dyed to order according to the special requirements of their particular manufacture.

J. B. Martin & Co., of Norwich, purchased in the United States silk in the gray and shipped it to J. B. Martin & Co., of Lyons, France, with directions to have all of the silk dyed and some of it thrown; that is to say, twisted to the number of turns to the inch required—the thrown silk to be wound on beams. In accordance with these directions J. B. Martin & Co., of Lyons, sent some of the silk to a "throwster," who twisted the silk to the number of turns ordered and thereby produced an organzine or thrown silk yarn for which he charged, in 1916, 4 francs, and in 1917, 4.50 francs per kilogram, made up of the following items:

*During the year 1916.*

Francs.

| | |
|---|---:|
| 1. Transportation, packing, conditioning | 0. 20 |
| 2. Soaping | . 05 |
| 3. Power, rent, lighting, heating, taxes, insurance | . 54 |
| 4. Waste | . 25 |
| 5. Wages and overhead charges | 2. 06 |
| 6. Supplies and upkeep | . 08 |
| 7. General expenses | . 40 |
| 8. Profit | . 42 |
| Total | 4. 00 |

*During the year 1917.*

Francs.

| | |
|---|---:|
| 1. Transportation, packing, conditioning | 0. 26 |
| 2. Soaping | . 08 |
| 3. Power, rent, lighting, heating, taxes, insurance | . 61 |
| 4. Waste | . 25 |
| 5. Wages and overhead charges | 2. 15 |
| 6. Supplies and upkeep | . 16 |
| 7. General expenses | . 47 |
| 8. Profit | . 52 |
| Total | 4. 50 |

All of the silks whether thrown or not were sent to a dyer who dyed them to the color and shade required by J. B. Martin & Co., of Norwich, and thereby produced a dyed silk yarn for which the dyer in 1916 charged 18.53 francs per kilogram, and in 1917, 20.65

francs per kilogram. The items making up the charge for dyeing, for the years 1916 and 1917 were as follows:

*For the year 1916.*

|  |  | Francs. |
|---|---|---|
| 1. Transportation expenses | | 0. 73 |
| 2. Wages for help | Fr. 3. 00 | |
| Overhead expenses | . 98 | |
| | | 3. 98 |
| 3. Raw material (chemical products) | | 8. 90 |
| 4. Power, lighting, and heating | | . 84 |
| 5. General expenses | | 2. 32 |
| 6. Profit | | 1. 76 |
| Total | | 18. 53 |

*For the year 1917.*

|  |  | Francs. |
|---|---|---|
| 1. Transportation expenses | | 0. 79 |
| 2. Wages for help | Fr. 3. 25 | |
| Overhead expenses | . 99 | |
| | | 4. 24 |
| 3. Raw materials (chemical products) | | 10. 15 |
| 4. Power, lighting, and heating | | 1. 14 |
| 5. General expenses | | 2. 47 |
| 6. Profit | | 1. 86 |
| Total | | 20. 65 |

The thrown silks after dyeing were warped and wound on beams by J. B. Martin & Co., of Lyons, for which service a total charge of 9.50 francs per kilogram was made prior to December 1, 1916, 9.73 francs for the month of December, 1916, and 9.95 francs after the first of January, 1917. The charge for warping and winding prior to December 1, 1916, during December, 1916, and during the year 1917, was made up of the following items:

*Prior to December 1, 1916.*

|  | Francs. |
|---|---|
| 1. Transportation and freight charges | 0. 20 |
| 2. Wages and overhead charges | 5. 57 |
| 3. Power, lighting, and heating | . 50 |
| 4. General expenses | 1. 50 |
| 5. Profit | 1. 73 |
| Total | 9. 50 |

*During December, 1916.*

|  | Francs. |
|---|---|
| 1. Transportation and freight charges | 0. 20 |
| 2. Wages and overhead charges | 5. 98 |
| 3. Power, lighting, and heating | . 50 |
| 4. General expenses | 1. 75 |
| 5. Profit | 1. 20 |
| Total | 9. 73 |

*During the year 1917.*

Francs.
1. Transportation and freight charges............................................. 0. 20
2. Wages and overhead charges.................................................... 6. 39
3. Power, lighting, and heating.................................................... . 50
4. General expenses................................................................ 1. 50
5. Profit........................................................................... 1. 36
                                                                        ———
     Total....................................................................... 9. 95

To produce the silk yarns imported for J. B. Martin & Co., of
Norwich, and to bring them to the condition which they had when
imported, they were subjected to no process of manufacture of any
kind, so far as the evidence discloses, other than the throwing, dye-
ing, warping, and winding of some of them and the dyeing of all
of them.

As the appraisers found no market for the goods imported in the
country of exportation, they were appraised under the terms of
paragraph L at not less than the cost of their production, which cost
of production as defined by the paragraph is—

the cost of materials and of fabrication * * * *general expenses to be estimated a$_t$
not less than 10 per centum, covering each and every outlay of whatsoever nature inciden$t$
to such production* * * the expense of preparing and putting up such mer
chandise ready for shipment, and an addition of not less than 8 nor more than 50
per centum upon the total cost as thus ascertained.* [Italics are ours.]

The importer contends that the invoice value of the importations
was the cost of their production inasmuch as that value included the
cost of materials, the cost of all manufacturing processes to bring
such materials to the condition of the imported merchandise, general
expenses, amounting to more than 10 per cent of the cost of all
manufacturing processes, the expense of preparing and putting up
the merchandise ready for shipment, and a profit which was more than
8 per cent of the cost of all manufacturing processes, plus the expense
of preparing the goods for shipment.

The invoice value does include the items specified by importer's
counsel, but unfortunately, the sum total of those items is not the
cost of production provided for by paragraph L, because the item
"general expenses" is less than 10 per cent of the outlay of every
nature incident to production; that is to say, the cost of materials
and cost of fabrication, and because the profit is less than 8 per cent
of the total cost; that is to say, the cost of materials, cost of fabrica-
tion, general expenses—properly calculated—and the expense of
preparing and putting up the goods for shipment. All that was
covered by the invoice value, was first, the cost of materials, cost of
fabrication, and general expenses, which amounted to more than 10
per cent of the cost of *processing* the goods, but less than 10 per cent
of the cost of *materials* and *fabrication*; second, the cost of preparing
the yarns for shipment; and third, profit, which was more than 8

per cent of the cost of *processing* and preparing the goods for shipment, but less than 8 per cent of the cost of materials, cost of fabrication, *general expenses ascertained* as provided by law, and the expense of preparing and putting up the merchandise ready for shipment. *Actual* general expenses and *actual* profit may have been accounted for in the invoice values, but as the expense and profit so accounted for did not reach the minimum required by the statute, the invoice values did not represent the true cost of production as defined by the tariff act. Austin, Baldwin & Co. *v*. United States (7 Ct. Cust. Appls., 186; T. D. 36505). We must hold, therefore, that the invoice value was less than the cost of production determined in accordance with the provisions of paragraph L.

In view of the fact that some profit and some general expenses are represented in the invoice values, the addition of 10 per cent and 8 per cent to the total invoice value may amount to something more than the true cost of production, but as no such claim was made in the protest or contended for before the board or on the hearing of this appeal, we can hardly consider that phase of the matter in disposing of the case.

As to the claim of the importer that the goods covered by entry number 112385 were invoiced and entered at a greater value than the true cost of production, it is enough to say that the record does not establish that the merchandise so invoiced and entered was composed of the raw material for which the particular price alleged was paid. Indeed, the evidence affirmatively shows that silks in the gray purchased by J. B. Martin & Co., of Norwich, and shipped to Lyons, were not always returned to them as dyed yarns. If the evidence had disclosed, however, that all of the raw material had been converted into dyed yarns and returned in that form to the Norwich concern, we would still be unable to say that the price claimed to be paid was the price actually paid for the particular raw material of any particular importation, and consequently unable to say that the invoice value exceeded the cost of production thereof.

No appeal appears to have been taken from certain appraisements of the general appraiser adding only 8 per cent to the invoiced value, and if the decision of the classification board covers such cases, it should as to them be and it is hereby reversed.

The addition to the invoice values of 10 per cent for general expenses and 8 per cent for profit by the board of three general appraisers in all cases appealed to that board should be sustained, and the decision of the classification board as to those cases is *affirmed*.