(Reap. Dec. 8194)

EMPIRE DISTRIBUTORS, SUCCESSOR TO EMPIRE WHOLESALERS
v. UNITED STATES

Entry No. 3500.

(Decided December 30, 1952)

*John C. Ray* for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Dorothy C. Bennett, Arthur R. Marloccia*, and *Samuel D. Spector*, special attorneys), for the defendant.

MOLLISON, Judge: This appeal for reappraisement involves the value, for duty purposes, of sanitary kitchen step-on waste cans manufactured by Engineering Products of Canada, Ltd., of Montreal, Canada, exported from Canada on September 30, 1946, and entered at the port of Detroit, Mich. The entered value of the merchandise was $1.15, less 5 per centum, less 8 per centum tax, each, and it was appraised at $1.23 each, net, packed, on the basis of foreign value,

which is defined in section 402 (c) of the Tariff Act of 1930, as amended. All prices and values referred to herein are in Canadian currency.

The issues raised by this appeal for reappraisement were previously tried before Judge Ekwall of this court, and briefs were submitted. At that time, plaintiff's primary contention was that no foreign, export, or United States value for the merchandise involved existed within the meaning of those terms as used in section 402, *supra*, and that cost of production, which value is defined in section 402 (f), was the correct basis of value for the merchandise involved. The defendant contended for the value found by the appraiser, based upon foreign value, less 8 per centum for Canadian sales tax, conceded not to be a dutiable item.

Thereafter, in a well-reasoned and clearly stated memorandum and order reported in 24 Cust. Ct. 609, Reap. Dec. 7827, Judge Ekwall found that foreign value was inapplicable to the merchandise at bar for the reason that the market was controlled. He further found that there was no export value and no United States value, and that the evidence offered with respect to cost of production was incomplete. Judge Ekwall noted that it was the burden of the plaintiff to establish the value of the merchandise and that the plaintiff had failed to meet that burden, and that ordinarily in such case the value found by the appraiser would govern. However, as indicated above, Judge Ekwall had found that foreign value, upon which the appraised value was based, was inapplicable, and, consequently, he determined that the ends of justice would best be served by restoring the case to the Detroit docket in order that the missing elements of proof as to cost of production might be supplied.

Thereafter, the case came on for trial before the writer, at which time both parties offered proof bearing upon the elements of cost of production. At that time, it seemed to the writer that the position of the defendant as to the correct basis to be used in the determination of the value of the involved merchandise was clear and that there was no question but that the correct basis was cost of production as defined in section 402 (f) of the Tariff Act of 1930. This is demonstrated by the following colloquy:

JUDGE MOLLISON: Before you start, Mr. Martoccia, is it agreed by you and for the defendant that foreign value is not applicable to this case?

MR. MARTOCCIA: There is no foreign value.

JUDGE MOLLISON: There is no foreign value. What about export value?

MR. MARTOCCIA: There is no export value.

JUDGE MOLLISON: And United States value?

MR. MARTOCCIA: There is no United States value.

JUDGE MOLLISON: So, it is agreed between the parties that the proper basis for valuation is cost of production.

MR. MARTOCCIA: Yes. (Tr. p. 30–31.)

However, in the brief filed on behalf of the defendant (p. 2) before me the following appears:

The Government has urged in its brief heretofore filed herein that foreign value is the proper basis of value. The court in its order directed that the additional evidence be confined to the elements of cost of production. The defendant herein does not retreat from its position that the foreign value is the correct basis for the value herein, although this memorandum is limited to the principle of cost of production.

Assuming, therefore, that the issue as to the correct basis of value is still an open one at this point, the writer has carefully examined the record, both as made before Judge Ekwall and as made before himself, and also the memorandum and order prepared and entered by Judge Ekwall bearing upon the issue as to the correct basis of value to be applied to the merchandise at bar. As a result thereof, the writer adopts *in toto*, and incorporates herein by reference, the reasoning and findings of Judge Ekwall upon that issue.

Cost of production, which is found to be the correct basis upon which the value of the merchandise in question must be determined, is defined in section 402 (f), *supra*, as follows:

(f) Cost of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Proceeding, therefore, to the determination of cost of production of the involved cans, I find that before me the parties have agreed that there is no controversy as to the items of cost entering into paragraphs (1) and (3) of the above definition. According to the record, the total amount for the items of cost of production specified in these two paragraphs was $63.91 per hundred cans, made up as follows:

Cost of materials_____ $41. 87
Cost of direct labor (i. e., fabrication cost)_____ 22. 04
                                                              _____
                                                              $63. 91

It appears from the record (defendant's collective exhibit 7) that the cost of the material used for packing was included in the above figure for cost of materials, and that the cost of labor incurred for packing was likewise included in the figure for cost of fabrication, and that the individual costs incurred for packing could not be separately determined.

This is rather unfortunate from the standpoint of exactness and accuracy, for the reason that the items specified in the cost-of-production statute, paragraph (2), usual general expenses, and paragraph (4), profit, are intended to be calculated on the basis of costs exclusive of the packing costs specified in paragraph (3). It may well have been that the packing costs were negligible as compared to the cost of materials and fabrication of the cans. Counsel for both parties seem to have proceeded upon this assumption, for in their calculations both have accepted the $63.91 per hundred cans figure as representing the total of the costs specified in paragraph (1) of the cost-of-production statute, and have disregarded the item of packing costs specified in paragraph (3) thereof. The court will, therefore, adopt the view of the matter taken by the parties.

In these circumstances, the first item for consideration is that represented by paragraph (2) of the cost-of-production statute, the usual general expenses. It appears from the record, and particularly from defendant's collective exhibit 7, being the report of Treasury Representative E. J. Allen, dated October 27, 1950, No. 3–117, together with the exhibits therein referred to, that on or about October 16, 1950, the Treasury representative visited the offices of the Engineering Products of Canada, Ltd., the predecessor of which was the manufacturer and exporter herein, and interviewed Mr. John Heeden, the comptroller of the company, relative to information respecting the statutory items of cost of production.

The Treasury representative reported as follows:

\* \* \* Mr. Heeden said that the capital interests of the firm were reorganized in 1948 and all of the firm's records pertaining to the sales of the step-on cans under consideration had either been destroyed or moved from the offices and were no longer available; that he was the only official now with the firm that had any knowledge of these transactions. However, Mr. Heeden stated that cost-of-production records for the step-on cans were available for the period from January 1, 1946 to August 23, 1946.

The foregoing was corroborated by Mr. Heeden's testimony before this court.

The information given to the Treasury representative on October 16, 1950, with respect to the elements specified in paragraph (3), is in the following form:

Overhead:

Accumulated rate of expenses for the period Jan. 1st to July 31st, 1946: 182.82% of cost of direct labor_____ $40.29 [per hundred cans]

It will be noted that the accounting practice or procedure of expressing overhead, or usual general expenses, as a percentage of direct labor cost (i. e., cost of fabrication), which was used by the manufacturer and exporter of the merchandise, is not an element of dispute herein, and both parties base their differing amounts for the item of usual general expenses upon that practice or procedure.

At the trial before the writer, Mr. Heeden admitted that he had supplied the foregoing information to the Treasury representative but stated that the 182.82 per centum figure represented the total cost of overhead on all of the different products which were then being produced by his company, including step-on cans. In other words, the 182.82 per centum figure did not represent the overhead, or usual general expenses, applicable to step-on cans alone, but represented the overhead of the company in connection with all its operations. Some of the items of expense, he said, which are included in the total were not applicable at all to step-on cans, and some were only partially applicable.

Mr. Heeden testified that the step-on cans were "a very simple work to manufacture" being a "straight stamping job" not requiring in their manufacture expensive machinery and tools having high maintenance costs, whereas some of the other products being manufactured at that time were "precision jobs" requiring expensive and perishable machinery and tools.

Mr. Heeden said that at the time of the visit of the Treasury representative in 1950, only the figure of 182.82 per centum was then available, being taken from a summary or total of the general overhead applicable to the period in question, which summary or total was the only figure for overhead that could be located at that time. Subsequent to the visit of the Treasury representative, he caused a search to be made of the premises which housed the company, and finally located in an attic thereof a file containing a breakdown or analysis of the company's overhead for the year 1946, showing, for each item of general expense, the monthly total.

The said breakdown or analysis was received in evidence without objection as an item regularly kept in the course of business by Mr. Heeden's company, and was marked plaintiff's collective exhibit 5.

It is observed that plaintiff's collective exhibit 5 does not, on its face, break down the 1946 overhead of the company on the basis of the portion thereof applicable to the production of step-on cans and the portion applicable to other products manufactured by the company during that time. It describes 59 separate items of overhead, lists the monthly total applicable to each, and provides certain columnar totals of all overhead items by months, as well as overhead rates and cumulative totals.

Mr. Heeden testified that *in his opinion* the overhead rate (i. e., percentage of overhead to direct labor cost) applicable to step-on cans should not be more than 100 per centum. This was quite frankly given as an opinion, and apparently is not relied upon by the plaintiff as establishing the fact, as the brief filed on behalf of the plaintiff uses a figure of 128.4 per centum for overhead arrived at on the basis of the following evidence:

As to 10 of the 59 items of overhead listed in plaintiff's collective exhibit 5, Mr. Heeden testified that only the following percentages of the totals for each such item were properly applicable to the cost of producing step-on cans:

| Item | Percentage of total applicable to step-on cans |
|---|---|
| Technical salaries | None |
| Automobile | None |
| Experimental | None |
| Tool repair | 10% |
| Municipal—Provincial tax | 10% |
| Depreciation—Building | 10% |
| "    —Machinery & equipment | 10% |
| "    —Furniture & fixtures | 10% |
| "    —Rolling stock | 10% |
| Maintenance of machinery | 20% |

Presumably, the overhead rate of the remaining 49 items of overhead was fully applicable to the production of step-on cans.

In the brief filed on behalf of the plaintiff, its counsel has made calculations to arrive at an overhead rate which would result when the portion of overhead charges *not* applicable to step-on cans was deducted from the total of overhead charges. By this means, counsel has arrived at an overhead rate of 128.4 per centum. In so doing, counsel based his calculations upon the period from January 1, 1946, through September 30, 1946. Although the date of exportation of the instant merchandise was September 30, 1946, the use of the period of January through September 1946, as the basis for calculating overhead, is not in harmony with the basis used in connection with the undisputed figures for materials and fabrication costs. The materials and fabrication figures, hereinbefore set out, are for the period from January 1 to August 23, 1946. The 182.82 per centum overhead rate

contended for by the Government is for the period from January 1 to July 31, 1946. It seems to the court that a more accurate result would be arrived at by basing the calculations for overhead upon the figures shown in plaintiff's collective exhibit 5 for the period from January 1, 1946, to August 31, 1946, the nearest date thereon to August 23, 1946, the end of the period forming the basis of the undisputed figures as to costs of materials and fabrication.

Upon this basis, and using the figures supplied in plaintiff's collective exhibit 5, the overhead rate (i. e., percentage of overhead to direct labor or fabrication cost) applicable to the calculation of cost of production of the step-on cans at bar is 134.41 per centum. The data and calculations which lead to this result are as follows:

| Item | Total amt. Jan. through Aug. 1946 | % not applicable to step-on cans | Amt. not applicable to step-on cans |
|---|---|---|---|
| Technical salaries | $30, 020. 48 | 100 | $30, 020. 48 |
| Automobile | 4, 392. 18 | 100 | 4, 392. 18 |
| Experimental | 5, 092. 20 | 100 | 5, 092. 20 |
| Tool repair | 16, 434. 46 | 90 | 14, 791. 02 |
| Municipal—Provincial tax | 3, 382. 41 | 90 | 3, 044. 17 |
| Depreciation—Building | 2, 352. 10 | 90 | 2, 116. 89 |
| "  —Machinery & equipment | 10, 098. 73 | 90 | 9, 088. 86 |
| "  —Furniture & fixtures | 374. 00 | 90 | 336. 60 |
| "  —Rolling stock | 2, 290. 96 | 90 | 2, 061. 87 |
| Maintenance of machinery | 56, 061. 59 | 80 | 44, 849. 67 |

Total amount of overhead not applicable to step-on cans_____ $115, 793. 94

Total amount of overhead January through August 1946 [exhibit 5]_____ $485, 782. 14

Less total amount of overhead not applicable to step-on cans (above)_____ 115, 793. 94

Total amount of overhead applicable to step-on cans_____ $369, 988. 20

Cost of direct labor January through August 1946_ $275,270.96 [exhibit 5]

Percentage of cost of overhead applicable to step-on cans to cost of direct labor=

369,988.20÷275,270.96=1.34408+=134.41 per centum

At this point it should be noted that counsel for the defendant, in the brief filed in its behalf, takes the position that the only competent evidence found in the record as to the overhead applicable to the calculation of the cost of production of the step-on cans at bar is that contained in both the Treasury representative's report, defendant's collective exhibit 7, and plaintiff's collective exhibit 5 showing the cumulative overhead rate for the period from January 1 to July 31, 1946, to be 182.82 per centum. Counsel has cited as applicable to the situation a statement made by our appellate court in the case of

*Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093, wherein in an affidavit received in evidence an affiant stated that a certain quantity was a usual wholesale quantity, and in the same instrument evidentiary facts bearing upon the question of usual wholesale quantities were disclosed.

The appellate court there said:

\* \* \* While a statement that a given quantity is or is not a usual wholesale quantity might in some circumstances be regarded as some substantial evidence of the fact, such a statement can have no weight as a statement of fact when all of the facts upon which the statement is made are disclosed. It then becomes merely a conclusion of the witness, which can have no weight with the court in determining what is a usual wholesale quantity.

No similar or analogous situation exists here. In this case, a witness who, because of his position in the company, was qualified to testify, stated that certain items of general expenses or overhead were either wholly or partially not applicable to the production of merchandise of the kind here involved, but were applicable to the production of merchandise of another kind. The "usual general expenses" called for in paragraph (2) of the cost-of-production formula, according to the statute, are those:

\* \* \* in the case of *such or similar* merchandise; [Italics added.]

and, in the circumstances of this case, the testimony of the witness as to the applicability or nonapplicability of certain items of usual general expenses, or overhead, to the production of merchandise such as or similar to that in issue was competent, material, and relevant to the issues.

Upon the record before me and for the reasons hereinbefore stated, I find that the usual general expenses in the case of merchandise such as or similar to that here involved, within the meaning of that term as used in section 402 (f) of the Tariff Act of 1930, were 134.41 per centum of the fabrication or "direct labor" cost hereinbefore set out. This leaves for consideration only the item of profit, which is defined in paragraph (4) of said section 402 (f) as follows:

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

While Mr. Heeden was on the stand he was interrogated by counsel for the plaintiff with respect to whether he knew of any other manufacturers of "this can, or a similar or like can" at the time of exportation of the merchandise in issue. Mr. Heeden stated that there was a manufacturer of a larger can, but the said larger can, in the witness' opinion, was not similar to the can produced by his company.

It will be noted that for the purposes of section 402 (f) (4), *supra*, the profit required is not necessarily limited to that realized by other manufacturers producing *such or similar* merchandise, but is that "which ordinarily is added, in the case of merchandise *of the same general character* as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise *of the same class or kind.*" [Italics added.]

Part of defendant's collective exhibit 7 consists of a report of a Treasury representative detailing the results of investigations made at the offices of two Canadian manufacturers of kitchen step-on waste cans (apparently in competition with the cans here in issue) of the profit actually made in one case, and added in the other case, during the year 1946. This evidence was offered by the defendant and was not objected to by the plaintiff. In each case, the net profit was 10 per centum of the factory and overhead costs, and, in view of the fact that this is in excess of the statutory minimum of 8 per centum, I find it to be the profit applicable to the cost of production of the merchandise here under consideration under the provisions of section 402 (f) (4), *supra*.

A recapitulation of the elements of cost of production of the involved merchandise is as follows:

Section 402 (f):

| | | |
|---|---|---:|
| (1) | Cost of materials and fabrications, etc. | $63. 91 |
| (2) | Usual general expenses—134.41% of $22.04 | 29. 62 |
| (3) | Containers, etc. (included in (1) and (2)) | — |
| (4) | Profit—10% of $93.53 (sum of (1) and (2)) | 9. 35 |
| | Total (per 100 cans) | $102. 88 |

The foregoing represents the cost of producing, under the statutory formula, 100 cans. The cost of production of one can, therefore, would be $1.03.

On the entire record, I find as facts:

(1) That the merchandise involved consists of 9,020 sanitary kitchen step-on waste cans manufactured by Engineering Products of Canada, Ltd., of Montreal, Canada, exported from Canada on September 30, 1946, and entered at the port of Detroit, Mich.

(2) That at the time of exportation of the said merchandise there was no market value or price at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Canada either for home comsumption or for exportation to the United States in the usual wholesale quantities and in the ordinary course of trade.

(3) That at the same time there was no price at which such or similar imported merchandise was freely offered for sale in the principal

market of the United States for domestic consumption to all purchasers in the usual wholesale quantities and in the ordinary course of trade.

(4) That the cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business, was Canadian $63.91 per 100 cans.

(5) That the usual general expenses in the case of such or similar merchandise were Canadian $29.62 per 100 cans.

(6) That the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States, was included in the totals set forth in finding (4), *supra*.

(7) That the addition for profit equal to the profit which ordinarily was added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind, was 10 per centum of the sum of the elements of cost of production set forth in findings (4) and (5), *supra*.

I conclude as matters of law:

(1) That cost of production, as defined in section 402 (f) of the Tariff Act of 1930 is the proper basis of value for the merchandise in issue, and

(2) That such cost of production was Canadian $1.03 per can.

Judgment will issue accordingly.