**UNITED STATES**

v.

**FASHION RIBBON CO., Inc.**

**A.R.D. 252; Reappraisement R63/14119.**

United States Customs Court,
Third Division, Appellate Term.
March 10, 1969.

————◆————

William D. Ruckelshaus, Asst. Atty. Gen. (Bernard J. Babb, New York City, trial attorney), for appellant.

Barnes, Richardson & Colburn, New York City (Earl R. Lidstrom, and James F. Donnelly, New York City, of counsel), for appellee.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges.

LANDIS, Judge:

This case is before us on application for review of the decision and judgment in Fashion Ribbon Co., Inc. v. United States, 58 Cust.Ct. 737, R.D. 11314, reappraising ribbon novelties imported from Haiti in May 1963. The novelties, in the shape of bows or other ornamental motifs, are used principally to decorate women's undergarments.

On trial below, the parties conceded that, as appraised and claimed, the proper basis for valuation of the ribbon novelties was constructed value, section 402 (d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 70 Stat. 943, T.D. 54165, 19 U.S.C. section 1401a(d). It was so adjudged. No error having been raised, we do not review that part of the judgment below.

Constructed value, *supra*, is defined as follows:

(d) CONSTRUCTED VALUE.— For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed

ready for shipment to the United States.

Appellant (defendant below) alleges that in finding the amount of constructed value, as distinguished from basis, the trial judge otherwise erred on seven counts. The three counts which we deem material, and on which the other four perfunctorily turn, specify that the trial judge erred:

3. In finding and holding that the amounts of general expenses and profit as elements of constructed value may be proved as one element.

4. In not finding and holding that the amounts of general expenses and profit as elements of constructed value must be separately proven.

5. In finding and holding that appellee proved the amounts of general expenses and profit as elements of constructed value.

The narrow limits of our review, on the above allegations, take substance from appellant's contention that, in the case at bar, appellee's proof offered to establish that both general expenses and profit were determined by taking 30 percent of the known cost of labor for the respective items of merchandise. The trial court held that proof of general expenses and profit expressed in one amount was sufficient to establish these elements. It is from this holding that appellant notes a sharp dissent and submits that general expenses and profit "must be proved as separate items in establishing a value on the basis of constructed value." (Appellant's brief, page 6.) A subsidiary issue, tied to appellant's latter statement, is whether the amount of general expenses and profit is adequately proved of record. The trial judge decided against appellant on both grounds.

We affirm the decision and judgment below and have but little to add to the trial judge's statement that:

Under the old law, general expenses and profit were provided for separately in different subdivisions. The Customs Simplification Act of 1956 brought the two components together in a single subdivision. In view of this action and the interpretation given to the old law, it is evident that Congress did not intend a separate itemization for general expenses and for profit.

\* \* \* \* \*

Defendant [appellant] claims that the procedure of the manufacturer here in calculating the amount for general expenses and profit by taking 30 percent of the labor cost is not in accordance with the statute. The statute does not state the manner in which general expenses and profit are to be computed except that they are to be equal to that usually reflected in sales of merchandise of the same general class in the ordinary course of trade and in the usual wholesale quantities. Mr. Sicard stated that 30 percent of the labor cost was the factor actually used and that a markup based on a percentage of labor cost is normal in the production of ribbon novelties in Haiti. No evidence to the contrary has been presented. Profit is often expressed in percentages and in Empire Distributors, Successor to Empire Wholesalers v. United States, 30 Cust. Ct. 487, Reap.Dec. 8194, affirmed sub nom. United States v. Empire Distributors, Successor to Empire Wholesalers, 33 Cust.Ct. 568, A.R.D. 47, there was an accounting practice of expressing general expenses as a percentage of direct labor cost. The old law provided for minimum percentages for general expenses and for profit. The new law eliminates these percentages, but in bringing together the two elements, there is no logical reason and no statutory provision against expressing the single amount in a percentage, if that is what was actually and usually done. [58 Cust.Ct., at pages 743–744.]

Appellant's argument on the separate treatment of general expenses and profit in normal commercial practice is mere discourse. The legislative history on the Customs Simplification Act of 1956 and amended section 402(d), cited by ap-

pellant, is admittedly inconclusive of the point. Section 402(d) does, however, state the items of general expenses and profit as one element of constructed value. To delimit separate proof necessary of the amount of general expenses and the amount of profit would be contrary to what the statute says. Appellant is not "unmindful" that the statute "may be construed as suggesting proof [of general expenses and profit] as one element." On that score, considering that amended section 402(d) joins two cost items, previously separately stated in section 402(f) of the old law, we think the statute is unambiguous and that the specific language therein is the best evidence of congressional intent. United States v. Border Brokerage Co., 48 CCPA 10, C.A.D. 754.

As to the amount found below for general expenses and profit, namely 30 percent, there is nothing in the law that proscribes a percentage figure provided it is the actual amount. United States v. Maier, 21 CCPA 41, 47, T.D. 46378.

We next comment on whether the 30 percent is actual and equal to that usually reflected in sales of merchandise of the same general class or kind. There is no disputing the fact that the manufacturer had used the 30 percent figure for at least eight years prior to the exportation of the ribbon novelties, as the amount necessary to cover his general expenses and profit. Eight years is a fairly long time to use the same percentage figure for general expenses and profit. There has to be a time when that percentage figure stopped being "estimated", if it ever was, and when it is shown, as it is in this record, that the percentage is not out of line with that usually reflected in sales of merchandise of the same general class or kind, we think that as a matter of fact the per-

centage is "actual".[1] There is no dispute from a legal standpoint that the figure for general expenses and profit must be actual. The only disagreement is as to a question of fact upon which, in our opinion, the record supports appellee.

We also believe that any discussion of whether general expenses and profit are shown of record to be "equal to that usually reflected in sales of merchandise of the same general class or kind", would overreach the trial judge's decision on a point which appellant at no time has raised or briefed. The record shows that there were no other manufacturers of ribbon novelties in Haiti. Short of appellant raising issue as to manufacturers in Haiti of merchandise of the same general class or kind, we see no reason why the fact that there were no other manufacturers of ribbon novelties in Haiti should not be accepted as a *prima facie* showing that there were no manufacturers in Haiti of merchandise of the same general class or kind.

We incorporate herein by reference the findings and conclusions of the trial court and affirm the decision thereon.

Judgment will be so entered.

RICHARDSON, Judge (dissenting).

I regret that I am unable to concur in the views of the majority concerning assignment of error number 5. In my opinion there is no evidence in the record before us of "actual" general expenses and profit meeting the requirements of the constructed value theory of valuation, other than as appraised.

The only evidence in the case consists of an affidavit dated October 8, 1965, and signed by one Georges Sicard, sole owner and proprietor of Aiguilles d'Haiti, the exporter of the involved ribbon novelties. The affidavit was received

---

1. Contrary to the statement in the dissent that the manufacturer "makes no pretense that his general expenses and profit are anything other than 'estimated'," the manufacturer's sole statement on this point is to the effect that the 30 percent "markup to cover general expenses and profit [is] based upon a percentage of labor [which] is normal in the production of ribbon novelties in Haiti *because of the known cost of labor*, which is always performed on a piecework basis." [Emphasis added. Exhibit 1.]

in evidence upon the trial as plaintiff's exhibit 1. In it Mr. Sicard states that his company has been engaged in the manufacture of ribbon novelties, including those at bar (identified as Items No. S/2004, OR/2003, and O/2004/B) for the past ten years, that he has had personal knowledge of the company's practices, having been in charge of the company's operation since its beginning, that ribbon novelties are textile trimmings in the shape of bows, or other ornamental motifs used principally to decorate women's undergarments, that to the best of his knowledge there were no other manufacturers of ribbon novelties in Haiti during the year 1963, that during said year ribbon novelties were not sold in Haiti and his company's entire production of ribbon novelties were sold to the appellee and exported from Haiti, and that there are no manufacturers of ladies' garments in Haiti to consume ribbon novelties.

The affidavit then goes into details of the cost of production of the items in issue, itemizing the costs of materials and fabrication and of the general expenses and profit. With respect to the elements of general expenses and profit, Mr. Sicard states:

General expenses and profit incurred in producing such items is as follows:

| Item No. | General Expenses and Profit per Gross |
|----------|---------------------------------------|
| S/2004   | .0840 |
| OR/2003  | .0960 |
| O/2004/B | .0840 |

This factor is determined by taking 30% of the known labor cost for each item. This factor does not vary and has been my markup to cover general expenses and profit since 1955.

In this connection Mr. Sicard also states that the markup for general expenses and profit, among other things, does not vary with the quantity sold or purchased, that a markup to cover general expenses and profit based upon a percentage of labor is normal in the production of

ribbon novelties in Haiti because of the known cost of labor, which is always performed on a piecework basis, and that compensating workers on a piecework basis is considered a proper method of paying for labor in Haiti.

In commenting on this solitary piece of evidence before the single judge Government counsel stated in his brief (page 8):

\* \* \* It appears that what the manufacturer has done here is to take 30% of one of the direct costs, i.e, labor costs, in determining its general expenses and profit, and has never actually computed them. It is submitted that such a procedure is not in conformity with the requirements of the statute, and on this basis, plaintiff has failed to show that its claimed value is the correct dutiable constructed value.

The trial court answered this contention of the Government by stating (pages 743–744 of 58 Cust.Ct.):

\* \* \* The statute does not state the manner in which general expenses and profit are to be computed except that they are to be equal to that usually reflected in sales of merchandise of the same general class in the ordinary course of trade and in the usual wholesale quantities. Mr. Sicard stated that 30 percent of the labor cost was the factor actually used and that a markup based on a percentage of labor cost is normal in the production of ribbon novelties in Haiti. No evidence to the contrary has been presented. Profit is often expressed in percentages and in Empire Distributors, Successor to Empire Wholesalers v. United States, 30 Cust.Ct. 487, Reap. Dec. 8194, affirmed sub nom. United States v. Empire Distributors, Successor to Empire Wholesalers, 33 Cust. Ct. 568, A.R.D. 47, there was an accounting practice of expressing general expenses as a percentage of direct labor cost. The old law provided for minimum percentages for general expenses and for profit. The new law

eliminates these percentages, but in bringing together the two elements, there is no logical reason and no statutory provision against expressing the single amount in a percentage, if that is what was actually and usually done. And the majority affirm the view of the trial court on this phase of the case, stating, among other things:

> \* \* \* Eight years is a fairly long time to use the same percentage figure for general expenses and profit. There has to be a time when that percentage figure stopped being "estimated," if it ever was, and when it is shown, as it is in this record, that the percentage is not out of line with that usually reflected in sales of merchandise of the same general class or kind, we think that as a matter of fact the percentage is "actual" \* \* \*.

It seems to me that the contention of the Government above noted, preserved for our review under assignment of error number 5, is well taken. We are not confronted with a factual situation, as were the courts in the *Empire Distributors* case, involving statutory cost of production under the old law, where a foreign manufacturer has allocated a certain percentage of his "actual" total general expenses to the cost of producing merchandise exported to the United States in the proportion that such "actual" total general expenses bears to the production of the exported merchandise. The factual situation confronting us is one in which the foreign manufacturer of the imported merchandise has made an "estimate" of his general expenses and profit by taking a certain percentage of the manufacturer's actual labor costs in producing said merchandise. In the former instance, general expenses are "actual," while in the latter situation, general expenses are "estimated." And the exporter in this case, Georges Sicard, makes no pretense that his general expenses and profit are anything other than "estimated." The single judge sustains Sicard's practice because this is what he "actually and usually does," and not because the figure

he comes up with represents an "actual amount" of general expenses and profit.

Moreover, the very nature of the term "general expenses" precludes Sicard's practices in this regard from being considered as anything else but a practice of "estimating" his general expenses. The factor at the base of Sicard's calculation, namely, *labor,* is a direct manufacturing cost. On the other hand, *general expenses* are indirect manufacturing costs—the expenses of doing business. United States v. Alfred Dunhill of London, Inc., 32 CCPA 187, 189, C.A.D. 305. Consequently, with all due respect to the majority view, no lapse of time, however great, can have the effect of transforming into an indirect manufacturing cost what is not such in its essential nature.

When the reappraisement below is viewed in this light, it will be readily seen that two things are wrong with it, insofar as general expenses and profit are concerned. Firstly, in permitting a constructed value appraisement to be founded on "estimated" general expenses and profit, the single judge reversed a practice of many years standing which sanctioned appraisement of merchandise under the cost of production formula only on the basis of "actual" general expenses and profit. See Austin, Baldwin & Co. v. United States, 7 Ct.Cust. Appls. 186, T.D. 36505; Stirn v. United States, 10 Ct.Cust.Appls. 17, T.D. 38257; Stirn v. United States, 12 Ct.Cust.Appls. 42, T.D. 39981; Mrs. G. P. Snow v. United States, 69 Treas.Dec. 1625, 1629, Reap.Dec. 3900, modified and remanded in Id. v. Id., 24 CCPA 319, T.D. 48767; Gerhard & Hey Co., Inc. (Philipp Wirth) v. United States, 30 Cust.Ct. 580, A.R.D. 13; United States v. Heemsoth-Kerner Corp. (Bauer Type Foundry, Inc.), 31 CCPA 75, C.A.D. 252; and United States v. Jovita Perez, 36 CCPA 114, C.A.D. 407. Nothing but the most cogent reason such as a clearly enunciated legislative intent to change this time honored practice would justify departure from it under the new law formula. And I

do not see in the statutory changes brought about by the Customs Simplification Act of 1956 any intention on the part of Congress, mindful as it must have been of the construction made by the courts of prior statutory provisions relating to general expenses and profit under the cost of production formula, to substitute calculations of "estimated" general expenses and profit in the place and stead of calculations of "actual" general expenses and profit. In this connection Senate Report 2560 to Accompany H.R. 6040 merely states:

> The present law provides for other methods of valuation when export value or foreign value cannot be used. Section 2 continues the use of these other methods of value if export value cannot be determined.*

And certainly the language "in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States" appearing in the new law formula for ascertaining general expenses and profit can hardly be said to apply to anything but "actual" general expenses and profit. So, while I can readily agree with the trial court that the "amount" of general expenses and profits called for under the new law formula need not be broken down into individual items, there can be no doubt that the composite figure must purport to represent "actual" general expenses and profit, in line with what has been the practice prior to the enactment of the Customs Simplification Act of 1956. And here, the figures tendered by the appellee before the trial court disclosed no such "actual" general expenses and profit.

Secondly, the decision of the trial court attaches too much significance to the practices of the solitary ribbon novelty manufacturer here involved on the matter of general expenses and profit under a constructed value appraisement. It is not the exporter's general expenses and profit with which appraising officers and reappraising courts are concerned,

but rather with general expenses and profit "equal to that usually reflected in sales of merchandise of the same general class or kind * * * by producers in the country of exportation" —an obviously broader category. United States v. John V. Carr & Son, Inc., 52 Cust.Ct. 599, 607, A.R.D. 165, affirmed sub nom. John V. Carr & Son, Inc. v. United States, 52 CCPA 62, C.A.D. 860; Empire Distributors, Successor to Empire Wholesalers v. United States, *supra*, at page 495, affirmed sub nom. United States v. Empire Distributors, Successor to Empire Wholesalers, *supra*. And it has not been established in plaintiff's exhibit 1 that merchandise of the same general class or kind, i.e., textile trimmings other than ribbon novelties, was not produced in Haiti during 1963. Nor has the appellee undertaken in this record to negative reliance by the appraiser on figures derived from a consideration of merchandise of the same general class or kind as that at bar, insofar as general expenses and profit under constructed value are concerned.

The trial court did not refer in its decision below, in so many words, to the language of 19 U.S.C.A. section 1401a (d) (2), to wit, "an amount for general expenses * * * equal to that usually reflected in sales of merchandise of the same general class or kind * * *". But the trial court's decision comes squarely up against this language in that court's undertaking to answer appellant's argument addressed to the question of the legal insufficiency of the evidence under the statute which brings such language into focus. Consequently, decision on the point by the reviewing tribunal is inescapable *vis-a-vis* assignment of error number 5. And the majority opinion gives, I think, significant recognition to the genuineness of this issue under section 1401a(d) (2) when the opinion endeavors first to reconcile the proof below with this statutory language before finally rejecting consideration of the question of non-compliance with such

---

* 3 U.S.Code, Cong. & Admin.News (1956) page 4181.

language as "overreach[ing] the trial judge's decision on a point which appellant at no time has raised or briefed." Thus, the majority appear to be using the substance of section 1401a(d)(2) in support of the trial court's decision and at the same time raising a question as to whether it is appropriate for the dissent to use the section in reaching its decision.

For the reasons stated I conclude that the evidence of record does not support the trial court's conclusion that the values contended for by the appellee properly represented constructed value. As I view the record the lack of evidence of general expenses and profit in accordance with the requirements of the new law formula pertaining thereto is fatal to appellee's case, and fully supports appellant's contention made under assignment of error number 5. Aside from the decision in this particular case, the position taken by the trial court and upheld by the majority, would permit a single foreign manufacturer to fashion a standard for ascertaining constructed value based upon his own peculiar practice rather than the objective standard provided for in the statute.

I would, therefore, reverse the judgment of the court below and affirm the findings of the appraiser.