(R.D. 11681)

NATIONAL CARLOADING CORPORATION *v.* UNITED STATES

Entry No. 5758, etc.

(Decided October 8, 1969)

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* and *Joseph Schwartz* of counsel for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Glenn E. Harris,* trial attorney), for the defendant.

WATSON, Judge:   This is an appeal for reappraisement of certain merchandise invoiced as unfinished silvered mica condenser sections exported from Japan on September 2, 1958, and entered at the port of Chicago, Illinois, under consumption entry No. 5758. The goods were appraised at the invoiced prices plus 13 per centum, on the basis of United States value as defined in section 402(c), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

Both parties concede that the correct basis of appraisement is the United States value of said merchandise. Plaintiff contends, however, that said value is the same as the invoiced prices.

Plaintiff called five witnesses and introduced seven exhibits. Defendant called no witnesses and offered no exhibits.

Mr. Parke K. Linsley, examiner of merchandise, United States Appraisers Office, Chicago, Illinois, was called as plaintiff's first witness but gave no testimony pertinent to the case.

Mr. Charles L. Peterson, line examiner at the port of Chicago, was called as plaintiff's second witness. He stated that he made the advisory return of value on the imported merchandise and that said return was accepted by the appraiser. The returned values were the invoice unit values plus 13 per centum, packed (R. 10–11), and were based upon sales by the importer, Intercontinental Industries of Chicago, in the United States (R. 13).

On cross-examination, Mr. Peterson added that he thought the sales were "taken in conjunction with mica, the over-all sales of the United States, in other words, to return by ways and means by Section 500 the United States value." (R. 14).

Plaintiff next called Mr. Frank San Roman, president of the importer in this case, Intercontinental Industries, Inc. Mr. San Roman stated that the company was an importer and exporter of electronic components and related products, including unfinished mica condenser sections such as those involved here (R. 15). The unfinished sections (plaintiff's exhibit 1) are sold to manufacturers of condensers to be made into the finished condenser and then used in radios, televisions, computers, etc.

Mr. San Roman testified that at the time of importation, September 25, 1958, his company was the only importer of unfinished mica condenser sections. Said sections were offered for sale to manufacturers at prices stated in a price list identified as plaintiff's exhibit 4, which was in effect on September 2, 1958. The price list was either mailed or personally delivered to prospective customers and sales were in accordance with the price list. As to how such prices were determined, Mr. San Roman testified as follows (R. 38–41) :

Q. Will you tell us how they were determined?—A. I use a formula by increasing the f.o.b. cost of the goods by 100 per cent and deducting 5 per cent.

Q. Was that an exact formula or approximate formula?— A. It is a formula based on experience. It is not a scientific formula, therefore, it is an approximate formula.

\* \* \* \* \* \* \*

Q. What did the markup include?—A. General expenses and profit.

\* \* \* \* \* \* \*

Q. Did you attempt to allocate general expenses to any particular product?—A. No.

When asked why he made no allocation, Mr. San Roman replied, "Because our business is a small operation and we handle different items. The same people who do different types of work, we have no departmentalized sections; in short, there is no possible way that I can see to assign a given expense to a given item" (R. 65).

Mr. Morris Leff was called as plaintiff's fourth witness. Mr. Leff is an accountant in the employ of the importer, Intercontinental Industries, for more than twenty years. In an attempt to show how the importer arrived at a gross selling price for the mica condensers, Mr. Leff stated that he had prepared exhibits 6 and 7 which are calculations depicting gross markup (exhibit 7) and gross selling price (exhibit 6).

Plaintiff called Mr. Roy D. Raemer, a certified public accountant, as its last witness. He stated that he periodically prepared financial statements for the company and is familiar with the way Intercontinental keeps its books. Mr. Raemer testified that it would not be feasible (economically) for Intercontinental Industries to allocate general expenses and profit to any particular product (R. 107), but that there are instances, in some companies where it would be feasible to, in fact, allocate general expenses to a specific product. One method which could be used to allocate expenses is on the sales dollar, by allocating a ratio of the unit expenses to each product in relation to its percentage of the company's total sales volume (R. 108). On cross-examination he added that other ways to allocate general expenses would be in relationship to inventory space or inventory values or by a combination of methods (R. 113).

Since the basis of appraisement in this case has been conceded, the question before the court is what is the proper United States value of the unfinished mica condenser sections at the time of exportation?

The relevant statutory provision reads as follows:

Section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165:

(c) UNITED STATES VALUE.—For the purposes of this section, the United States value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold, or in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

(1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement;

(2) the usual costs of transportation and insurance and other usual expenses incurred with respect to such or similar merchandise from the place of shipment to the place of delivery, not including any expense provided for in subdivision (1) ; and

(3) the ordinary customs duties and other Federal taxes currently payable on such or similar merchandise by reason of its importation, and any Federal excise taxes on, or measured by the value of, such or similar merchandise, for which vendors at wholesale in the United States are ordinarily liable.

If such or similar merchandise was not so sold or offered at the time of exportation of the merchandise undergoing appraisement, the United States value shall be determined, subject to the foregoing specifications of this subsection, from the price at which such or similar merchandise is so sold or offered at the earliest date after such time of exportation but before the expiration of ninety days after the importation of the merchandise undergoing appraisement.

As was stated in *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502 (1952), plaintiff is burdened by a two-fold responsibility of proving that the appraisement is erroneous and of establishing a proper value in its place. For this to be accomplished successfully, every material issue must be met, and if plaintiff fails to do so, the value fixed by the appraiser remains in full force and effect. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495 (1952).

Plaintiff in this case is confronted with the same problem that was involved in *Judson Sheldon International Corporation* v. *United States*, 51 Cust. Ct. 374, Reap. Dec. 10586 (1963) ; affirmed 54 Cust. Ct. 773, A.R.D. 183 (1965). There was in issue merchandise of the same kind as is now in question, and plaintiff also sought to establish a United States value different from that reached by the appraiser. Plaintiff's difficulty in that case arose when it attempted to establish profit and general expenses as required by section 402(c) (1), concerning which the trial court stated :

* * * The court is not satisfied that the evidence as to "profit and general expenses" is sufficient to support plaintiff's claimed values. According to the evidence, no separate books were kept by the importer covering the profit and general expense items as applied to the imported merchandise alone. The testimony indicates that

the only records kept by the company show entries of sales of all types of merchandise by the company; that, in order to determine the profit and general expenses to be assigned to the involved merchandise, it was necessary to assume that the same amount of profit proportionately was derived from the sale of the films and condensers as was derived from the sales of other merchandise; and that the general expenses relating to the handling of the condensers and films were exactly the same in proportion as the general expenses incurred in handling the other merchandise sold by the importer.

Plaintiff here has abandoned any attempt to establish general expenses and profit by a percentage formula. Instead, it admits that there are no records of general expenses attributable to the merchandise here in issue (R. 41) and claims that to keep such records would not be economically feasible (R. 65). It gives us instead, a single figure which includes both general expenses and profit and labels this figure its "markup".

We agree with plaintiff, that as decided in the recent case of *Fashion Ribbon Co., Inc.* v. *United States*, 58 Cust. Ct. 737, R.D. 11314 (1967) ; affirmed *United States* v. *Fashion Ribbon Co., Inc.*, 62 Cust. Ct. 1015, A.R.D. 252, 296 F. Supp. 337 (1969), under the amended section 402(c), *supra*, the amount of general expenses and profit allowed as a deduction need not be broken down into separate figures. However, there still exists the requirement that these figures must purport to represent the general expenses and profit usually added in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement. See, *Stirn* v. *United States*, 10 Ct. Cust. Appls. 17, T.D. 38257 (1920) ; *Stirn* v. *United States,* 12 Ct. Cust. Appls. 42, T.D. 39981 (1924) ; *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378 (1933) ; *United States* v. *Heemsoth-Kerner Corp.* (*Bauer Type Foundry, Inc.*), 31 CCPA 75, C.A.D. 252 (1943).

Though plaintiff has established without rebuttal that it was the only importer of unfinished mica condenser sections, it was not thereby relieved of the obligation of showing what were the actual profits and general expenses incurred in sales of merchandise of the same class or kind. It was therefore incumbent upon plaintiff to provide this court with evidence of what were the elements of the general expenses and profit in its sales of the condenser sections. See, *Judson Sheldon International Corp.* v. *United States, supra.*

An examination of the figures in exhibits 6 and 7, set out in part, reveals an item labeled "gross markup" but is lacking in indication of what this item consists of.

Exhibit 6      Selling Price, Cost and Mark Up
Page 1        Condenser Sections—September 1958

| | CM 15 5% 15 MMF | CM 15 5% 22 MMF | CM 15 5% 75 | CM 15 5% 100 | CM 15 5% 220 |
|---|---|---|---|---|---|
| Gross Selling Price_____ | $27. 60 | $13. 90 | $15. 20 | $15. 60 | $23. 00 |
| **Deduct:** | | | | | |
| Transportation charges: | | | | | |
| Tokyo to West Coast__ | . 55 | 1. 10 | 1. 10 | . 34 | . 13 |
| West Coast to Chicago_ | . 24 | . 39 | . 44 | . 19 | . 11 |
| Insurance (1% of FOB Japan Price)_____ | . 15 | . 07 | . 08 | . 09 | . 12 |
| Bank Commission (1⅛% of FOB Japan Price)_____ | . 17 | . 08 | . 09 | . 10 | . 10 |
| Gross Markup_____ | 9. 82 | 3. 87 | 4. 29 | 5. 10 | 8. 59 |
| | 10. 93 | 5. 51 | 6. 00 | 5. 82 | 9. 05 |
| Net U.S. Value Including duty_____ | 16. 67 | 8. 39 | 9. 20 | 9. 78 | 13. 95 |
| Duty at 15%_____ | 2. 17 | 1. 09 | 1. 20 | 1. 28 | 1. 82 |
| Net U.S. Value before duty_____ | 14. 50 | 7. 30 | 8. 00 | 8. 50 | 13. 10 |

Exhibit 7      Mark Up Computation
Page 1a      Condenser Sections—September 1958

| | CM 15 5% 15 MMF | CM 15 5% 22 MMF | CM 15 5% 75 | CM 15 5% 100 | CM 15 5% 220 |
|---|---|---|---|---|---|
| Gross Selling Price_____ | $27. 60 | $13. 90 | $15. 20 | $15. 60 | $23. 00 |
| **Deduct:** | | | | | |
| Invoice Price_____ | 14. 50 | 7. 30 | 8. 00 | 8. 50 | 12. 10 |
| Transportation charges_ | . 79 | 1. 49 | 1. 54 | . 53 | . 24 |
| Insurance_____ | . 15 | . 07 | . 08 | . 09 | . 12 |
| Bank Commission_____ | . 17 | . 08 | . 09 | . 10 | . 13 |
| Duty - 15%_____ | 2. 17 | 1. 09 | 1. 20 | 1. 28 | 1. 82 |
| | 17. 78 | 10. 03 | 10. 91 | 10. 50 | 14. 41 |
| Gross Markup_____ | 9. 82 | 3. 87 | 4. 29 | 5. 10 | 8. 59 |

Especially in view of the testimony that the selling price of unfinished mica condenser sections was calculated upon an approximate formula, which did not take into consideration actual direct expenses, it does not appear that the gross markup figures shown are meaningful.

Neither is there any evidence of the general expenses which plaintiff asserts make up part of the figure for "markup". Without a showing of what general expenses were taken into consideration where the cost of general expenses and the amount of profit were computed, how is the court to determine whether or not proper elements of general expenses have been included. Plaintiff's *ipse dixit*, that X dollars represents the total of general expenses and profit is a conclusion without supporting evidentiary facts. *See* and compare *Brooks Paper Company* v. *United States, supra.*

Plaintiff here has, in fact, done nothing more than subtract from its gross selling price the itemized expenses allowed by section 402(c)(2), (3), *supra*, and its own purchase price, to arrive at the figure (exhibit 7) which it calls its "markup", though, in fact, these actual disbursements were not per se taken into consideration in arriving at its sales prices in the first place. Then, in exhibit 6, with "markup" replacing the figures for the invoice price, plaintiff then determines what he contends is the net United States value. This figure (United States value), in every instance, is the same as the invoice price.

However, as was stated by Chief Judge Rao, in his decision affirming *Judson Sheldon International Corp.* v. *United States, supra* "* * * if it had been the intention of Congress to predicate United States value upon the invoice price, which is what this argument amounts to in substance, the elaborate system of deductions set forth in section 402(c), as amended, is pointless. But this language is very much a part of the definition of United States value, and it may not be assumed that the legislature employed meaningless phraseology. *United States* v. *C. J. Tower & Sons,* 44 CCPA 1, C.A.D. 626."

While this court recognizes the difficulty which plaintiff has encountered in meeting the requirements of this section, the lack of proof of general expenses attributable to the mica condenser sections must therefore cause this appeal to fail. The problem that plaintiff has incurred in maintaining proper records of general expenses, while understandable, can have no bearing on the requirements of the statute.

The court thus finds the facts to be as follows:

1. The unfinished mica condenser sections involved in this appeal for reappraisement were exported from Japan on September 2, 1958.

2. That said merchandise was entered at the invoiced unit values, but was appraised at said unit values plus 13 per centum upon the basis of the United States value of such merchandise, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That at the time of exportation of said merchandise, the importer, Intercontinental Industries, Inc., was the only importer of mica condenser sections to the United States.

4. That the evidence is inadequate to establish the profit and general expenses usually made in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement.

Therefore, the court concludes as a matter of law:

1. That United States value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise covered by this appeal for reappraisement.

2. That the values returned by the appraiser, which are presumptively correct, have not been overcome.

Judgment will be entered accordingly.