(A.R.D. 183)

JUDSON SHELDON INTERNATIONAL CORPORATION *v.* UNITED STATES

Entry No. 25989.

## Second Division, Appellate Term

(Decided February 24, 1965)

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *Joseph Schwartz* of counsel) for the appellant.

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is an application for review of a decision and judgment sustaining the appraised values of certain imported merchandise. (51 Cust. Ct. 374, Reap. Dec. 10586.) The particular commodities involved are referred to in the record as mica films and so-called sections or unfinished silvered mica condensers. They are imported in various sizes and style numbers, and are used by the radio and television industry, computer manufacturers, and missile manufacturers for their electrical properties.

These items were exported from Japan on May 21, 1960, by Intercontinental Industries, Inc. (Far East Branch), of Tokyo, and imported by appellant for the account of Intercontinental Industries, Inc., of Chicago, Ill. Entry was made at the invoiced unit prices; and the merchandise was appraised at the invoiced unit prices, plus 13 per centum, on the basis of United States value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.[1]

---

[1] (c) UNITED STATES VALUE.—For the purposes of this section, the United States value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

(1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement;

(2) the usual costs of transportation and insurance and other usual expenses incurred with respect to such or similar merchandise from the place of shipment to the place of delivery, not including any expense provided for in subdivision (1); and

(3) the ordinary customs duties and other Federal taxes currently payable on such or similar merchandise by reason of its importation, and any Federal excise taxes on, or measured by the value of, such or similar merchandise, for which vendors at wholesale in the United States are ordinarily liable.

If such or similar merchandise was not so sold or offered at the time of exportation of the merchandise undergoing appraisement, the United States value shall be determined, subject to the foregoing specifications of this subsection, from the price at which such or similar merchandise is so sold or offered at the earliest date after such time of exportation but before the expiration of ninety days after the importation of the merchandise undergoing appraisement.

It is not disputed that United States value of statutory "such" merchandise is the proper basis of appraisement, but it is contended here, as it was below, that the invoiced prices correctly represent such values.

The record before the trial court consisted of the testimony of three witnesses called on behalf of plaintiff, 14 exhibits introduced by the plaintiff, and 1 exhibit introduced by defendant.

Appellant's witness, Frank San Roman, Jr., testified that he is vice president of the ultimate consignee, of which his father is president. Immediately after leaving college, he joined the firm, and in his 4 years of association therewith has become familiar with all phases of the company's operations and with its several competitors. He identified some samples representative of the imported merchandise, which were received in evidence as plaintiff's illustrative exhibit 1 (a sample of mica film) and plaintiff's illustrative exhibits 2, 3, and 4 (samples of several sizes of the condenser sections).

Mr. San Roman, Jr., stated that, on the date of exportation of the instant merchandise, his company was selling and offering for sale identical mica films and condenser sections produced in Japan by the same manufacturer. Prices for mica film were those contained on a pricelist, dated July 22, 1959, still in effect on May 21, 1960 (plaintiff's exhibits 5 and 5-A), and for condensers on a pricelist of April 1, 1958, also effective as of May 21, 1960 (plaintiff's exhibit 6). As to exhibit 6, the witness explained that it was mailed out February 3, 1960, and that the notation thereon, "worked this out 11/30/60," refers to an item not included in this importation. He further stated that the prices enumerated on the list were the prices at which the particular style numbers were sold per thousand pieces, f.o.b. customer's plant, to all customers, regardless of quantities purchased, without any restrictions as to disposition and use, and that there was no relationship of any kind between his company, its stockholders, officers, and directors, and the companies to which this merchandise was sold.

This witness also testified that there were others selling imported merchandise of the same class or kind as exhibits 1–4, including United Minerals in New York; Asheville-Schoonmaker, also in New York; Cavalier in Durham, N.C., and a few others, such as Ford Mica Co. of New York, which he was not able to locate. He contacted some of these companies, but was unable to obtain their profit and general expenses for the year 1960, explaining that—

I called the individuals on the phone, and asked to speak to an executive of the company, preferably the treasurer or controller, and when I was able to reach one of the individuals I asked if they would care to divulge their general expenses and profit on these items, and naturally they told me it was none of my business.

The testimony of this witness with respect to his competitors was corrected and amplified at a subsequent hearing when he more accurately

identified the firms he actually contacted and explained why he believed that certain of the companies were no longer in business. He also stated that he had mistakenly believed that his father had written to all of these firms when, as a matter of fact, he had not. However, he produced copies of seven letters (plaintiff's collective exhibit 13) which, he said, were sent to the seven companies subsequent to the first hearing, and the six replies thereto (plaintiff's collective exhibit 14) which were received.

Mr. San Roman, Jr., testified, on cross-examination, that while his company did not own, control, or have an interest in the Indian mines from which the mica is derived or in the Tokyo plant which processes it, his firm purchases the raw mica in India, sends it to Japan, sells it to the Japanese company which processes it, and then repurchases the processed material for sale in this country.

He further stated that none of the companies he contacted published an annual report, and that inquiries at Dun & Bradstreet did not disclose information as to profits; also, that defendant's exhibit A was a letter, dated July 1, 1959, written by his father, Frank San Roman, Sr., president of the importing corporation; and that normal conditions prevailed in the trade during 1960, there being neither a surplus nor a shortage of the material in issue.

Mrs. Lorraine Faford testified that she has been the bookkeeper for Intercontinental Industries, Inc., for almost 7 years and that she had prepared certain statements for use at the trial. These included schedules showing selling prices and expenses incurred in connection with the subject merchandise (plaintiff's exhibit 7 covering mica film and plaintiff's exhibit 8 covering condenser sections). She explained that she obtained the selling prices for each item number from the pricelists and computed general expenses as follows:

For the general expenses I computed the yearly sales, which were the net yearly sales, which were $1,121,000; then I computed only the mica and section sales, which were $1,023,000, or 91% of the total sales; then I computed the total expenses, which were $284,000. I took 91% of that, which came out to $259,000. $259,000 in proportion to the $1,023,000 is 25%, so I applied the 25% against this individual item, and in this case it came out to fifty-seven cents.

Mrs. Faford computed transportation changes by prorating the lowest rate of transportation used in 1960 against each item; she figured profit by adding all expenses and the cost, and subtracting the total from the selling price; and she calculated the amount of duty payable by dividing the net cost by 1.225 in the case of mica to determine duty at the rate of 25½ per centum, and by 1.15 for the condensers to show the 15 per centum rate on that merchandise.

This witness further stated that plaintiff's exhibit 9 consists of a monthly breakdown of total sales, and sales of mica film and con-

densers during the year 1960; plaintiff's exhibit 10 is an enumeration of all expenses for 1960; plaintiff's exhibit 11 is a monthly breakdown of total expenses for the year 1960, together with the proportion thereof attributed to mica film and condensers; and plaintiff's exhibit 12 is an itemization of each element of general expenses on a monthly basis. She also explained many of the items listed as general expenses.

Mr. Frank San Roman, Sr., testified that he had written the letter which is defendant's exhibit A; that he believed that Cavalier Mica Corp. was the only company which imported mica films from Japan during 1960, although there were other importers of mica film from other countries, and that, to his knowledge, no one else imported mica condenser sections from Japan during 1960. He further stated that he thought the observations in the reply from Cavalier Mica Corp. had no reference to the importation of mica films and sections during May 1960.

The trial court's finding that the invoice prices did not represent United States value was essentially a determination that appellant had failed to sustain its statutory burden of showing both that the appraisement was erroneous and that the claimed values were correct. 28 U.S.C., section 2633; *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502; *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495. Of the several grounds assigned in support of this conclusion, we are of opinion that the most significant relates to the problem of the sufficiency of the proof to establish the items of profit and general expense, which under the statute must be deducted to arrive at net United States value. In this connection, the trial court stated:

\* \* \* The court is not satisfied that the evidence as to "profit" and "general expenses" is sufficient to support plaintiff's claimed values. According to the evidence, no separate books were kept by the importer covering the profit and general expense items as applied to the imported merchandise alone. The testimony indicates that the only records kept by the company show entries of sales of all types of merchandise by the company; that, in order to determine the profit and general expenses to be assigned to the involved merchandise, it was necessary to assume that the same amount of profit proportionately was derived from the sale of the films and condensers as was derived from the sales of other merchandise; and that the general expenses relating to the handling of the condensers and films were exactly the same in proportion as the general expenses incurred in handling the other merchandise sold by the importer.

\* \* \* Plaintiff attempts to establish the general expenses for the involved merchandise by applying to such merchandise a percentage in relation to the percentage for general expenses covering all sales of merchandise made by plaintiff. This is unsatisfactory proof, since it may well be that it cost more to handle other types of merchandise, or less, as the case may be, than the outlay incurred for handling the imported merchandise. It is also very probable

that the amount or margin of profit differs as applied to the various types of merchandise involved. The court is definitely of the opinion that the evidence offered does not meet the burden resting upon the plaintiff to establish the amount of profit and general expenses properly deductible for the ascertainment of the value of the involved merchandise.

In considering the merit of this conclusion, we are confronted, at the outset, with a statutory provision which authorizes an allowance from the American selling price of the "profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement." It seems plainly evident that what is contemplated by the language of this provision is, in the first instance, a showing of the profit and general expenses which derive from sales of merchandise of the same class or kind as the imported merchandise and, secondly, that the profit and general expenses shall be those not of the particular importer, but which customarily obtain in the trade handling such merchandise.

This view comports with the construction of similar language appearing in the statutory definitions of cost of production in the Tariff Act of 1922, section 402(e), in the Tariff Act of 1930, section 402(f), and in the definition of constructed value in the Customs Simplification Act of 1956, section 402(d).

In the case of *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378, it was held that the phrase "usual general expenses * * * in the case of such or similar merchandise" refers not to a percentage of the total turnover of all goods sold by a manufacturer, but to the usual general expenses incurred only in the production of such or similar merchandise. Obviously, this is a repudiation of any accounting legerdemain which purports to allocate to the segment of a seller's operations relating to merchandise of the kind undergoing appraisement a proportionate share of the total general expenses when such seller handles several different kinds of articles.

The writer of this opinion, in the case of *Hill Brown Corp.* v. *United States*, 53 Cust. Ct. 412, Reap. Dec. 10823, review pending, adopted the principle expressed by the trial judge in the instant case to the effect that the term "general expenses," as used in the statutory definition of United States value, refers to overhead and other operating expenses incidental to the production and sale of goods of the character in issue, which may not be derived as a proportionate share of the total operating expenses of a company which engages in several different kinds of business activities.

Seemingly, there would be no purpose in providing for profit and general expenses incurred in connection with imported merchandise of the same general class or kind if, for example, expenses for advertis-

ing an entirely different product could be apportioned to the expenses of handling merchandise of the same general character as that in issue.

It is not disputed that general expenses and profits in the instant case were, in fact, calculated from total general expenses covering all phases of the business activities of the importing company. Indeed, mica films and condensers which are shown by the record to be entirely dissimilar articles, though having a common derivation, and are subject to different rates of duty, were combined for the purpose of ascertaining general expenses, and a gross percentage of general expenses calculated on the basis of both articles has then been applied to gross sales of both articles to determine the percentage of general expenses for each imported item. Simply because these two articles are distributed by the same company does not make them merchandise of the same class or kind, or sanction the apportionment of the general expenses in the manner here employed.

In this connection, we find the following statement in appellant's brief of more than passing interest:

From the exhibits and the testimony it is clear that condenser sections are not merchandise of the *same class or kind* as mica film. Note that in Sec. 402(d)(2) in referring to general expenses and profit for purposes of "constructed value" the statute speaks of merchandise of the same *general* class or kind which of course is a broader term than "the same class or kind." We submit that condenser sections, which have a different name than mica film, which are altogether different in construction from mica film, and which are sold at prices many times higher than mica film, are certainly not "of the same class or kind." [Italics quoted.]

Counsel for appellant seeks to justify apportionment on the theory that this is a perfectly proper and normal method of computing general expenses, and it would be impractical to keep separate records for each item of merchandise handled. Nevertheless, it is apparent that to permit this practice must inevitably result in there being charged to an article of the class or kind imported a portion of the general expenses actually attaching to a completely unrelated commodity. We are of opinion that the Congress, in providing for the allowance of the general expenses usually incurred in connection with sales of imported merchandise of the same class or kind, never intended to authorize the procedure followed in the case at bar to ascertain general expenses.

It is further urged that it is of no moment that the general expenses are not too accurately established since, given a fixed gross selling price, the subtraction therefrom of general expenses and costs results in profit. Hence, it is argued, if perchance the expenses are exaggerated, profit will be proportionately less, or vice versa, and since the statute allows the deduction of both profit and general expenses, in addition to costs of transportation, insurance, taxes, etc., the final net price will equal the cost, or invoice price, in most instances.

From a purely mathematical standpoint, the statement is, of course, correct. However, if it had been the intention of Congress to predicate United States value upon the invoice price, which is what this argument amounts to in substance, the elaborate system of deductions set forth in section 402(c), as amended, is pointless. But this language is very much a part of the definition of United States value, and it may not be assumed that the legislature employed meaningless phraseology. *United States* v. *C.J. Tower & Sons*, 44 CCPA 1, C.A.D. 626. "It is a basic rule of statutory construction that, if possible, significance and effect should be given every word." *Carey & Skinner, Inc.* v. *United States*, 42 CCPA 86, C.A.D. 576.

The answer, we think, lies in the fact that the deductions for profit and general expenses provided for in the law are not those of the importer of the merchandise undergoing appraisement, but those which are "usually made, in connection with sales in such market of imported merchandise of the same class or kind." In this way, were safeguards erected against an unusually low invoice price, occasioned perchance by some special relationships existing between the foreign shipper and the American purchaser, or any other factor.

Similar language in related statutes has been construed as requiring a showing either that there was no other merchandise of the same general character or that diligent efforts to obtain this information from others in the trade had proved unavailing. *United States* v. *Henry Maier, supra; United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407; *United States* v. *A. N. Deringer, Inc.*, 46 Cust. Ct. 762, A.R.D. 127; *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147.

Seemingly, what constitutes due diligence must depend upon the facts and circumstances involved in the matter in controversy and no rule of thumb will provide the answer for all situations.

In view of the foregoing considerations, we find it unnecessary to touch upon the other grounds discussed by the trial court in concluding that the evidence in this case was insufficient to overcome the presumptively correct values returned by the appraiser.

Accordingly, this court finds:

1. That the merchandise here involved consists of mica films and mica condenser sections, exported from Japan on or about May 21, 1960.

2. That said merchandise was entered at the invoiced unit values, but was appraised at said unit values, plus 13 per centum, upon the basis of the United States value of such merchandise, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That the evidence is inadequate to establish the elements of usual general expenses and profit.

4. That the record is insufficient to show the "profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement."

Wherefore, the court concludes:

1. That United States value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise covered by this appeal for reappraisement.

2. That the presumptively correct values returned by the appraiser have not been overcome.

3. That the judgment of the court below should be affirmed.

Judgment will be entered accordingly.