**NATIONAL CARLOADING CORPO-RATION, Appellant,**

v.

**UNITED STATES, Appellee.**

**A.R.D. 280;  Reappraisement R61/10201.**

United States Customs Court,
Second Division, Appellate Term.

Nov. 6, 1970.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), for appellant.

William D. Ruckelshaus, Asst. Atty. Gen., Ralph A. Bontempo, Trial Atty., U. S. Dept. of Justice, New York City, for appellee.

Before FORD and NEWMAN, Judges, and WILSON, Senior Judge.

NEWMAN, Judge:

This is an application for review by plaintiff below from the decision and judgment of Watson, J., the trial judge, in National Carloading Corporation v. United States, 63 Cust.Ct. 594, R.D. 11681 (1969).

The articles involved are unfinished silvered mica condenser sections exported on September 2, 1958 by Intercontinental Industries, Inc. (Far East Branch), Tokyo, Japan and entered at the port of Chicago, Illinois by appellant as customs broker for the account of Intercontinental Industries, Inc., Chicago. The exporter is a "branch operation" of the consignee.

The merchandise was appraised by the Government at the invoiced prices plus 13 per centum, packed, on the basis of United States value as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165. Appellant concedes that United States value is the correct basis of appraisement, but contends that the proper dutiable values are represented by the invoice prices.

Upon appeal for reappraisement, the trial judge rejected the values claimed by appellant finding "[t]hat the evidence is inadequate to establish the [addition for] profit and general expenses usually made in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement." Consequently, the presumption of correctness attaching to the value returned by the appraiser was held not to have been overcome.

For the reasons stated herein, we affirm.

## THE STATUTE

Section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165:

(c) *United States Value.*—For the purposes of this section, the United States value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

(1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement;

(2) the usual costs of transportation and insurance and other usual

expenses incurred with respect to such or similar merchandise from the place of shipment to the place of delivery, not including any expense provided for in subdivision (1) of this subsection; and

(3) the ordinary customs duties and other Federal taxes currently payable on such or similar merchandise by reason of its importation, and any Federal excise taxes on, or measured by the value of, such or similar merchandise, for which vendors at wholesale in the United States are ordinarily liable.

If such or similar merchandise was not so sold or offered at the time of exportation of the merchandise undergoing appraisement, the United States value shall be determined, subject to the foregoing specifications of this subsection, from the price at which such or similar merchandise is so sold or offered at the earliest date after such time of exportation but before the expiration of ninety days after the importation of the merchandise undergoing appraisement.

## THE ISSUE

██ The sole issue is whether the trial judge correctly held that appellant had failed to establish "the addition for profit and general expenses usually made, in connection with sales in such market [principal market of the United States] of imported merchandise of the same class or kind as the merchandise undergoing appraisement."

## THE RECORD

Appellant called five witnesses and introduced seven exhibits. Appellee offered no evidence. An accurate summary of the record is included in the opinion of the trial court, which need not be repeated here in full. However, we set forth the following salient facts:

Intercontinental Industries, Inc., Chicago, was the only United States importer of mica condenser sections in 1958. A mica condenser section is a "condenser minus the casing or outside coating" (R. 16). Mica condenser sections are used to make finished condensers. The latter, in turn, are used in radios, televisions, computers, etc.

In 1958, Intercontinental's sales prices to its United States customers (manufacturers of mica condensers) were calculated by adding to the f. o. b. Japan price a markup of 100 percent less 5 percent. Appellant's witness San Roman testified that the foregoing markup covered certain direct expenses, viz., transportation from Japan to the United States by steamer, inland transportation to Chicago, customs clearance charges, duty, marine insurance, and also included general expenses and profit.

With reference to an item designated on exhibits 6 and 7 [1] as "Gross Markup," the importer's accountant Leff explained:

> The gross markup item was arrived from taking the selling price and deducting the direct expenses, the freight, inland and from overseas, the insurance, the bank commission, and the actual duty that was paid on that particular item and that became our gross markup. * * * [R. 93.]

> * * * * * *

> Gross markup is actually the difference between your selling price and * * * the direct cost of your merchandise including freight, insurance, bank charges and the duty. [R. 95.]

Although the importer was engaged in selling several product lines, it kept no records of general expenses attributable only to unfinished mica condenser sections. Appellant insisted that, from an accounting standpoint, it was not practicable nor economically feasible for the importer to make an allocation of general expenses and profit to a particular product.

1. Exhibit 6 shows the computation of United States value for the condenser sections. Exhibit 7 shows the computation of the "Gross Markup" included in the United States sales prices.

## MARKUP—USUAL FOR CLASS OR KIND OF MERCHANDISE

Under the statutory definition of United States value, *supra,* certain "allowances" are deductible from the selling prices in the United States. The only allowance disputed in this case is that for profit and general expenses provided for in section 402(c) (1). Consequently, we must determine whether or not appellant has sustained its burden of establishing "the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement."

The most significant change made by the Customs Simplification Act of 1956 in the definition of "United States value" was that it eliminated the percentage limitation (8 percent) allowed for profit and general expenses (except for articles specified on the Final List). Instead, under the "new" law, the amount of the deduction is based on "the addition for profit and general expenses usually made, in connection with sales * * * of imported merchandise of the same class or kind as the merchandise undergoing appraisement."

■ We interpret the term "addition * * * made" as virtually synonymous with what accountants and tradesmen call "markup."[2] The addition or "markup" for profit and general expenses, which is deductible from the selling price in the United States, is that which is "usually" or customarily made for the "class or kind" of merchandise undergoing appraisement.

Hence, while under the "new" definition of United States value there is no longer any percentage limitation on the allowance for profit and general expenses, Congress nevertheless substituted the limitation that the deduction must be the customary markup in connection with the sale of merchandise of the same class or kind as that undergoing appraisement.

Among other things, the latter limitation is apparently intended to prevent a foreign manufacturer or seller who is related to the importer from obtaining a low appraisement by making all or most of his profit on the imported goods in the United States rather than a normal profit in export sales. Moreover, the limitation prevents an allowance for profit and general expenses from being predicated upon sales involving unusual markups for any reason.

In Judson Sheldon International Corporation v. United States, 54 Cust.Ct. 773, 780, A.R.D. 183 (1965), the principles applicable here were stated as follows:

* * * the deductions for profit and general expenses provided for in the law [section 402(c) (1)] are not those of the importer of the merchandise undergoing appraisement, but those which are "usually made, in connection with sales in such market of imported merchandise of the same class or kind." In this way were safeguards erected against an unusually low invoice price, occasioned perchance by some special relationships existing between the foreign shipper and the American purchaser, or any other factor.

Similar language in related statutes has been construed as requiring a showing *either that there was no other merchandise of same general character* or that diligent efforts to obtain this information from others in the trade had proved unavailing. United States v. Henry Maier, *supra*; United States v. Jovita Perez, 36 CCPA 114, C.A.D. 407; United States v. A. N. Deringer, Inc., 46 Cust.Ct. 762, A.R.D. 127; United States v. Berben Corporation, 49 Cust.Ct. 497, A.R.D. 147. [Emphasis added.]

Appellant's evidence indicates that the item designated as "Gross Markup" in exhibits 6 and 7 includes the importer's

2. "Markup" is defined in Webster's New International Dictionary, Second Edition (1957) as: "The amount added to the cost price in figuring a selling price to cover overhead and profit."

actual addition for profit and general expenses in connection with sales of mica condenser sections in 1958. Additionally, the record shows that Intercontinental was the sole importer of mica condenser sections in the United States in 1958. In view of these facts, appellant contends that the importer's actual markup represents the addition "usually made" in connection with sales of merchandise of the "same class or kind" as that undergoing appraisement.

Respecting the term "class or kind," appellant argues:

> * * * we consider mica condenser sections to be a class or kind of merchandise and when we proved that there were no other importers [of mica condenser sections], we established that there were no other importers of that class or kind of merchandise. [Trans. oral arg. 16.]

Appellee contends that there is a failure of proof respecting the issue of "class or kind," but does not dwell on this issue.

■ The question to be resolved, then, is whether appellant has proved that in 1958 there was no other merchandise imported of the "same class or kind" as mica condenser sections which, if proved, would warrant reliance upon the sole importer's actual markup for profit and general expenses as representing the addition "usually made." [3]

What Congress had in mind by using the term "same class or kind" in connection with determining the usual profit and general expenses may be gleaned to some extent from R.H.Rep.No.858, 84th Cong., 1st Sess., accompanying H.R.6040, which became the Customs Simplification Act of 1956. The pertinent portion of the House Report states (at pp. 6–7):

> A number of specific suggestions for amendments of section 2 of the bill were presented to your committee in the public hearings. These suggestions were carefully considered and the committee concluded that the amendments were either unnecessary or inconsistent with the purposes of the bill. The principal valuation amendments that were proposed in the public hearing are as follows:
>
> * * * * * *
>
> (4) The bill provides that in determining general expenses and profit for "United States value" or "constructed value," consideration should be given to such expenses and profit usually made in connection with sales of imported merchandise of the same class or kind. Some suggestions were made that such consideration should be limited to such or similar merchandise. It seems preferable to permit attention to be given to the profit and expenses *customary in a line of merchandise rather than be limited to the particular product.* [Emphasis added.]

■ Thus, the broad phrase "class or kind" evinces a Congressional intent to give wide latitude to appraising officers in comparing merchandise for purposes of determining what is the addition (viz., markup) usually made for profit and general expenses. Clearly, such phrase is less restrictive than a particular product and requires that the items compared be merely the same "line of merchandise."

■ In the instant case, there is no proof that mica condenser sections constitute a "class or kind"," rather than a particular product. It would appear that the imported articles fall within the line of merchandise known as capacitors,[4] of which mica condensers are but one type. See *Electrical Engineers' Handbook* (Electric Communication and Electronics), 4th ed., 1950. While the record shows that a mica condenser section is

---

3. Cf. Fashion Ribbon Co. v. United States, 58 Cust.Ct. 737, R.D. 11314 (1967), aff'd, United States v. Fashion Ribbon Co., Inc., 62 Cust.Ct. 1015, A.R.D. 252, 296 F.Supp. 337 (1969).

4. The *Electrical Engineers' Handbook, supra,* states: "Though *capacitor* is the preferred engineering terminology, the term *condenser* is still widely used." [Italics quoted.]

"a condenser minus the casing or outside coating" (R. 16), appellant failed to prove that the imported articles are of a different class or kind than *finished* condensers.

As stated, appellant's evidence shows that in 1958 Intercontinental was the sole importer of mica condenser sections. In our view, such fact does not negate that there was other merchandise imported of the "same class or kind" within the purview of the statute.

■ Appellant contends that inasmuch as Intercontinental was the sole importer of mica condenser sections, this fact established prima facie there was no other merchandise imported of the same class or kind. Continuing, appellant argues that the burden rested upon the Government to prove that there were in fact other importers of merchandise of the same class or kind, if the Government so contended. We do not agree. Such contention, in effect, puts the burden of proof on appellee respecting an essential part of appellant's case. Appellant had the burden of establishing *all* the elements necessary to a finding of the usual addition for profit and general expenses under section 402(c) (1).

Although appellant called as a witness the customs examiner Petersen, who made the advisory appraisement in this case, his testimony does not assist appellant in establishing the class or kind of merchandise upon which the allowance for profit and general expenses may be predicated. The examiner testified that he "probably" based his advisory appraisement on the importer's sales of condenser sections in conjunction with mica film,[5] although he did not recall specifically what sales he considered in returning the advisory appraisement (R. 13–14).

In brief, under the circumstances herein, it would be contrary to Congressional intent for the court to rely solely upon the importer's *actual* markup as establishing prima facie the addition "usually made" for profit and general expenses in connection with sales of the same class or kind of merchandise as that undergoing appraisement. Appellant therefore, has not proven its claimed United States values. Accordingly, the decision and judgment below sustaining the appraised values are affirmed.

We make the following findings of fact:

1. The unfinished mica condenser sections involved herein were exported from Japan on September 2, 1958.

2. The merchandise was appraised at the invoice unit values plus 13 per centum, packed, upon the basis of United States value, as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. At the time of exportation of the merchandise, Intercontinental Industries, Inc., was the only importer of mica condenser sections in the United States.

4. The evidence is inadequate to establish the profit and general expenses usually made in connection with sales of imported merchandise of the same class or kind as the merchandise undergoing appraisement.

We conclude as matters of law:

1. United States value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the values of the involved merchandise.

2. The values returned by the appraiser are the proper dutiable values.

Judgment will be entered affirming the decision below.

5. In Judson Sheldon International Corporation v. United States, 54 Cust.Ct. 773, 779, A.R.D. 183 (1965), the record showed that mica film and mica condenser sections are "entirely dissimilar articles, though having a common derivation."