**UNITED STATES**

v.

**GEIGY CHEMICAL CORPORATION et al.**

**A.R.D. 321; Reappraisement Nos. R66/10120–S, R65/16280 and R65/20992.**

United States Customs Court.

Sept. 4, 1974.

---

Carla A. Hills, Asst. Atty. Gen. (Bernard J. Babb, New York City, trial attorney), for appellant.

Busby, Rivkin, Sherman, Levy & Rehm, New York City (Saul L. Sherman, New York City, of counsel), for appellee Geigy Chemical Corp.

Barnes, Richardson & Colburn, New York City (James S. O'Kelly, Hadley S. King, Jr., and James H. Lundquist, New York City, of counsel), for appellee Sandoz, Inc.

George Bronz, Washington, D. C., for appellee Ciba Chemical & Dye Co.

Before FORD and NEWMAN, Judges.

NEWMAN, Judge:

Appellant (defendant below) has filed an application for review of the decision and judgment of Watson, J. in Geigy Chemical Corporation et al. v. United States, 70 Cust.Ct. 259, R.D. 11775, 358 F.Supp. 1275 (1973), wherein Judge Watson conducted a joint trial of three appeals for reappraisement, and sustained appellees' (plaintiffs below) claimed values.

The imported merchandise, consisting of certain benzenoid dyestuffs, was exported from Switzerland by J. R. Geigy, S.A., Sandoz, Ltd., and Ciba, Ltd. during 1965, and imported by each of their wholly-owned subsidiaries, appellees herein. The parties agree that the proper basis for appraisement is United States value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C. § 1401a(c)). The only elements of the appraised value in dispute are the statutory allowances for profit and general expenses pursuant to section 402(c)(1).[1] At the trial, ap-

---

1. Section 402(c)(1) provides:

"(c) *United States Value.*—For the purposes of this section, the United States value of imported merchandise shall be the price at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

(1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement;"

pellees successfully claimed that the proper allowance for profit and general expenses should be 33.4% rather than 19.1%, which latter figure entered into the Government's appraisement.

We affirm.

## THE RECORD

An extensive stipulation of the parties is fully set forth in the opinion of the trial court (70 Cust.Ct. at pages 261–266) to which reference will be made herein. It suffices to state at this juncture that we are in complete accord with the trial court's analysis of the facts.

## DECISION OF THE TRIAL COURT

Judge Watson held that the appraiser erroneously applied section 402(g)[2] in disregarding the profit and general expenses of appellees, the three largest importers of the merchandise under consideration, and in regarding the profit and general expenses of the smallest importer (Carbic) as those "usually made, in connection with sales * * * of imported merchandise of the same class or kind as the merchandise undergoing appraisement."

The trial judge noted that in 1964 appellees and Carbic possessed 100% of the United States market; and that appellees possessed the "lion's share" of the market (92.4%), with Geigy having the highest percentage of dollar volume of sales (37.8%), as evidenced by paragraph 9 of the stipulation, showing the following figures:

| Importer | Percentages of dollar sales |
| --- | --- |
| Geigy | 37.8% |
| Sandoz | 31.4% |
| Ciba | 23.2% |
| Carbic | 7.6% |

With reference to the foregoing figures, Judge Watson aptly commented (70 Cust.Ct. at page 269, 358 F.Supp. at page 1283):

> * * * In light of this division of the market, it would defy common sense to consider the experience of Carbic as that which is "usual" for the market in question. Nor will I discredit the experience of the firms with the larger shares of the market in the absence of specific discrediting evidence.

Further, Judge Watson held that there was no presumption that the experience of Geigy was tainted by any improper manipulations and contrivance between it and its parent company, and he noted that appellant had adduced no proof of any untoward circumstances in the sales between the importers and their parent company suppliers. On the other hand, uncontradicted affidavits submitted by appellees from the parent company suppliers, showed that the profits of appellees' suppliers exceeded the profit of the supplier of Carbic, the

---

2. Section 402(g) provides:

"(1) For the purposes of subsection (c)(1) or (d) of this section, as the case may be, a transaction directly or indirectly between persons specified in any one of the subdivisions in paragraph (2) of this subsection may be disregarded if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had occurred between persons not specified in any one of the subdivisions in paragraph (2).

"(2) The persons referred to in paragraph (1) are:

* * * * *

(E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the outstanding voting stock or shares of any organization and such organization;

* * * *"

company whose general expenses and profit in the United States were adopted by the appraiser.

Thus, the following table shows the percentages of profit of Sandoz, Ltd.; Ciba, Ltd.; and J. R. Geigy, S. A., suppliers to the three appellees, as against the profits of Durand & Huguenin, S. A., supplier to Carbic:

| Sandoz, Ltd | 37.6% |
| Ciba, Ltd. | 25.7% |
| J. R. Geigy, S.A. | 23.4% |
| Durand & Huguenin, S.A. | 12.3% |

As a basis for selecting Geigy's gross profit of 33.4% as the proper statutory allowance for profit and general expenses,[3] the trial judge held that what is usual in a market for purposes of section 402(c) is the experience of the largest segment of the market, or in that portion of the market which sells the greatest quantity of the merchandise in question. (Citing United States v. International Expediters, Inc., for Winsor & Newton, Inc., 40 CCPA 148, C.A.D. 511 (1953); and United States v. C. J. Tower & Sons of Buffalo, Inc., 60 CCPA 46, C.A.D. 1079, 470 F.2d 1393 (1972). Hence, since Geigy possessed a larger share of the market than any other firm (see table *supra* at page 1401), the general expenses and profit of Geigy represented the amounts of those elements which were "usual" in the market under consideration for purposes of computing the proper allowances under section 402(c)(1).

## CONTENTIONS OF THE PARTIES

Appellant contends that the proper allowance for general expenses and profit under section 402(c)(1) should be based upon the general expenses and profit of Carbic, a firm not related to its exporter. Consequently, urges appellant, the trial judge committed reversible error in predicating the statutory allowances upon the general expenses and profit of appellee Geigy, who was related to its exporter.

Appellant further argues that section 402(g) is applicable, notwithstanding that the relationship under section 402(g)(2) was between appellees and their parent companies in Switzerland. Hence, appellant insists that the appraiser properly disregarded the general expenses and profits of the appellees reflected in their sales in the United States, and adopted the general expenses and profit of Carbic as the proper allowances under section 402(c)(1).

Appellees contend that Geigy's profit and general expenses (33.4%), not Carbic's (19.1%), were "usual", and therefore should have been allowed by the appraiser; and that the appraiser erred in disregarding the experience of appellees solely because they were related to their Swiss suppliers.

## OPINION

After considering the parties' arguments, we have no hesitancy in reaching the determination that we are in accord with the opinion of the trial judge, excepting certain observations with respect to section 402(g), upon which we wish to comment.

The trial court held that section 402(g) was inapplicable in this case because: (1) the transactions in the United States between appellees and their customers were between unrelated companies, and thus not between persons specified in any of the subdivisions of section 402(g)(2); (2) the transactions between appellees and their parent companies were not transactions "in the market under consideration", since such market in the instance of United States value is the United States domestic market; and (3) even if there were a relationship between appellees and their purchasers in the United States, such relationship alone would not be sufficient

---

3. According to paragraph 8 of the stipulation, "gross profit" is the sum of net profit and general expenses. In 1964, Sandoz' gross profit was 29.9%, and Ciba's gross profit was 26.6%.

# 1402

to disregard transactions between them pursuant to section 402(g) in the absence of a further finding that the general expenses and profit realized in sales by appellees in the United States did not fairly reflect the amount usually reflected in sales of merchandise of the same class or kind as the involved merchandise.

We have concluded that the trial court correctly held that the appraiser misapplied section 402(g) in disregarding the profits and general expenses of appellees since his action was predicated solely upon appellees' relationship to their Swiss Suppliers.[4] Clearly, section 402(g) does not authorize disregarding of transactions involving related persons unless, *in addition* to the existence of a relationship, the amount representing an element of value does not reflect the usual market experience. Put otherwise, Congress did not intend in section 402(g) that the *usual* profit and general expenses be rejected because a transaction was between related persons. Yet, this would be the result in this case if appellent's position were upheld.

■ However, we are unable to agree with the trial court's holding that where the basis of appraisement is United States value a transaction must be "in the market under consideration" (viz., United States market) to be disregarded under section 402(g). In substance, the trial court held that the relationship of

appellees to their parent company suppliers was of no significance; and that since appellees were unrelated to their purchasers in the United States, section 402(g) was inapplicable. We believe this construction of the statute is too narrow, and entirely disregards the fundamental fact that rigged prices in the export market may materially affect the importer's profits and general expenses in the United States market. See National Carloading Corporation v. United States, 65 Cust.Ct. 830, 834, A.R.D. 280, 319 F.Supp. 1291 (1970), aff'd on other grounds, 60 CCPA 54, C.A.D. 1080, 469 F.2d 1398 (1972); Judson Sheldon International Corporation v. United States, 54 Cust. Ct. 773, 780, A.R.D. 183 (1965).

■■ Thus, when United States value is the basis for appraisement, as here, we are of the view that section 402(g) authorizes appraising officers to scrutinize export transactions between importers and their related supplier companies, and to disregard an importer's profit and general expenses as the proper allowances under section 402(c)(1) where the amounts thereof do not fairly reflect the usual amounts of those elements in sales in the United States.[5] Otherwise, "a foreign manufacturer or seller who is related to the importer [could obtain] a low appraisement by making all or most of his profit on the imported goods in the United Staes rather than a normal profit in export sales". National Carloading Corpo-

4. The parties stipulated as follows:

"11. In making the allowance for profit and general expenses specified in paragraph 4(b) above, the Appraiser, because the relationship between Geigy, Sandoz and Ciba, and their respective parent companies was such as is described in Section 402(g)(1), found that their profits and general expenses did not 'fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement,' disregarded their profits and general expenses for purposes of determining the proper allowances to be made under Section 402(c)(1), and based his allowance on the profits and general expenses of

Carbic. Having found for the aforesaid reasons that the profits and general expenses of Geigy, Sandoz, and Ciba did not fairly reflect the amount usually reflected in the market under consideration of merchandise of the same class or kind as the merchandise undergoing appraisement, the Appraiser did not determine the accuracy of the submissions by Geigy, Sandoz, and Ciba with regard to general expenses and profit".

5. Moreover, irrespective of section 402(g) we believe that appraising officers have *inherent authority*, indeed a *duty*, to consider the circumstances in *all* transactions between related persons and to disregard *any* transaction which is not a valid basis for determination of dutiable value.

ration, 65 Cust.Ct. at page 835, 319 F. Supp. at page 1294.

 Although we agree with the trial court that the "market under consideration" in section 402(g)(1) is the United States market when considering the United States value (see Brown, Alcantar & Brown, Inc. et al. v. United States, 69 Cust.Ct. 249, A.R.D. 306, 348 F.Supp. 723 (1972), such phrase refers to the immediately antecedent term in the statute, "sales", and not the more remotely antecedent term, "transaction". Therefore, concerning section 402(c)(1), the phrase "in the market under consideration" directed the appraiser's attention to profits and general expenses realized in *sales* in the United States market; but clearly the phrase did not limit the *transactions* that could be disregarded to merely those in the United States market. Accordingly, where United States value is the basis for appraisement, section 402(g) embraces transactions between related persons in the United States market, *and additionally* includes transactions between related exporters and importers. The latter transactions may be disregarded (under appropriate circumstances) even though the elements of value to be considered, viz., profit and general expenses, are realized in sales in the United States market.

While we conclude that the appraiser had plenary authority to disregard export transactions between appellees and their Swiss suppliers, if he found that the export prices were rigged, manipulated, or contrived to affect the United States value of the merchandise, the record fails to show the appraiser, in fact, disregarded any such export transactions. Rather, paragraph 11 of the stipulation indicates that nothing more than the relationship of the importers to their Swiss suppliers was considered by the appraiser in rejecting appellees' profits and general expenses. As noted above, under section 402(g) relationship alone did not warrant the appraiser's rejection of appellees' profits and general expenses.

We agree that the presumption of correctness attaching to the appraised values has been decisively overcome by the record. Further, we find that the trial court properly predicated the statutory deduction for the usual profit and general expenses under section 402(c)(1) on the experience of appellee Geigy, who had the largest share of the market, rather than on the experience of Carbic, who had the smallest share of the market.

In conclusion, we find no reversible error in the decision and judgment of the trial judge, and affirm. The numbered findings of fact and conclusions of law in the opinion of the trial judge are hereby adopted as our own.

Judgment will be entered accordingly.

The court wishes to commend counsel for the respective parties in this proceeding for their excellent briefs and oral arguments, which have been most helpful to us in considering the issues presented.

RAO, J., not participating.