**UNITED STATES, Appellant,**

v.

**GEIGY CHEMICAL CORPORATION, Appellee.**

**UNITED STATES, Appellant,**

v.

**SANDOZ, INC., Appellee.**

**UNITED STATES, Appellant,**

v.

**CIBA CHEMICAL & DYE CO., Appellee.**

**Customs Appeal No. 75–8.**

United States Court of Customs and Patent Appeals.

Oct. 23, 1975.

Rex E. Lee, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Bernard J. Babb, New York City, for United States.

George Bronz, Edward J. Farrell, Washington, D. C., for appellee Ciba.

Busby, Rivkin, Sherman, Levy & Rehm, Washington, D. C. (Saul L. Sherman, Washington, D. C., of counsel), for appellee Geigy.

James S. O'Kelly, New York City, for appellee Sandoz.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This appeal is from the judgment of the Second Division, Appellate Term, of the United States Customs Court. 73

Cust.Ct. 215, A.R.D. 321, 381 F.Supp. 1397 (1974), affirming the judgment of a single judge sitting in a consolidated reappraisement action, 70 Cust.Ct. 259, R.D. 11775, 358 F.Supp. 1275 (1973). We affirm.

## Facts

These consolidated reappraisement actions involve benzenoid dyestuffs imported by appellees during 1965. The parties agree that the proper basis for appraisement is United States value, defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C. § 1401a(c)),[1] and computed by deducting allowances specified in section 402(c) from the United States selling price. The parties disagree only over the allowances for profit and general expenses. The government, invoking section 402(g)(1) of the Tariff Act of 1930, as amended (19 U.S.C. § 1401a(g)(1)),[2] would have us disregard the profits and general expenses of appellees, because of the corporate relationship between each appellee and its respective exporter. In its appraisement, the government applied allowances based on the profit and general expenses of a small importer unrelated to its exporter. Appellees appealed the government's action. A stipulation narrowed the issues.

## Opinions Below

The appellate term affirmed the holding of the trial court, which sustained appellees' claimed allowances for profit and general expenses. The trial court considered that the usual allowances in the United States market could not be disregarded on the sole ground that the importers were wholly-owned subsidiaries of their parent exporters. The domestic transactions, upon which appellees' claimed allowances were based, were found by the trial court to have involved unrelated companies, to which section 402(g) was held inapplicable. The appellate term agreed, but did not agree with the further finding of the trial court that overseas transactions between appellees and their parent exporters were not subject to being disregarded under section 402(g). The appellate term believed that:

> [T]his construction of the statute is too narrow, and entirely disregards the fundamental fact that rigged prices in the export market may materially affect the importer's profits and general expenses in the United States market.

---

1. Section 402(c)(1) provides in pertinent part:

   (c) *United States Value.*—For the purposes of this section, the United States value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

   (1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement . . . .

2. Section 402(g) provides in pertinent part:

   (1) For the purposes of subsection (c)(1) or (d) of this section, as the case may be, a transaction directly or indirectly between persons specified in any one of the subdivisions in

paragraph (2) of this subsection may be disregarded if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had occurred between persons not specified in any one of the subdivisions in paragraph (2).

   (2) The persons referred to in paragraph (1) are:

   (E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the outstanding voting stock or shares of any organization and such organization . . . . . .

The appellate term reasoned that the phrase, "in the market under consideration" in section 402(g)(1), does not refer to the "remotely antecedent" term "transaction", when considering United States value, and does not limit the transactions that could be disregarded to those in the United States market. Hence, the appellate term concluded that transactions between related exporters and importers could be disregarded even though the allowances are realized in sales in the United States market.

Lastly, the appellate term found "that the presumption of correctness attaching to the appraised values has been decisively overcome by the record", and that the proper allowance for usual profit and general expenses under section 402(c)(1) was that of the appellee who had the largest share of the market.

## OPINION

■ We agree with both the trial court and appellate term that the government misapplied section 402(g) in disregarding the allowance for profit and general expenses claimed by appellees. As noted above, the opinions of the trial court and the appellate term differ with respect to the broad proposition that transactions between importers and related exporters may be disregarded when considering United States value.

■ Appellant, agreeing with the appellate term, argues that section 402(g) is applicable to the determination of United States value when the importer and exporter are related, because such relationship provides an opportunity to manipulate the sales price and the elements comprising that price. We agree that section 402(g) may be applied, but we disagree that the opportunity for chicanery alone makes it applicable to all determinations of United States value.

■ The profit and general expenses contemplated as allowances in calculating United States value are those "usually" occurring in connection with sales, in the United States market, of merchandise of the same class or kind as the merchandise undergoing appraisement. *Judson Sheldon International Corp. v. United States,* 54 Cust.Ct. 773, A.R.D. 183 (1965). Thus, in determining those allowances, transactions between importers and related exporters may be disregarded if, in the words of the statute, "any element of value . . . does not fairly reflect the amount usually reflected in sales . . . of merchandise of the same general class or kind as that undergoing appraisement."

■ Absent an element of value not fairly reflective of an amount "usually reflected", section 402(g) may not be employed to disregard transactions between importers and related exporters in determining United States value. Confusion may arise from section 402(g)'s applicability to transactions considered in calculating both United States value and constructed value. In our view, the phrase "market under consideration" refers to the market involved in the calculation of the particular value forming the basis of appraisement, *i. e.,* the domestic market in the calculation of United States value and the overseas market in the calculation of constructed value. In the present case, the market under consideration is the United States market. In calculating United States value herein, we hold that section 402(g) does not apply, the importers not being related to customers in the United States market and there being no persuasive evidence of an element of value not fairly reflective of an amount "usually reflected."

Appellant, reflecting its dissatisfaction with appellees' accounting methods, alleges that some general expenses, ordinarily born by exporters, were born by appellees upon resale. This allegation is made in the face of the parties' stipulation as well as cogent and uncontradicted expert testimony attesting to the propriety of the accounting method. In the absence of convincing contravening evidence, we must find appellant's allegation to have been unsubstantiated.

Appellant also questions the selection of the amount for profit and general expenses of the appellee having the largest share of the market as being "usual" and argues that the underlying "transaction" between that appellee and its parent exporter should be disregarded, absent a showing that the parent exporter's prices did not occasion an unusually low appraisement of United States value.[3] But such a showing was made. Affidavits from each parent exporter, establishing that its overseas profits exceeded those of the unrelated small exporter, negate appellant's suspicion that the transactions between appellees and their parent exporters were designed to reduce profit overseas and enlarge it in the United States. The record also demonstrates that virtually none of the general expenses of appellees represents transactions with related companies. The record thus confirms the correctness of the finding of the trial court and appellate term that the addition for profit and general expenses of the largest seller in the market is "usual."

Appellant asserts that the burden of proof does not shift until appellees have shown the appraisement to have been erroneous and until appellees have established a different value. We agree, however, with the trial court and the appellate term, that appellees made a prima facie showing, sufficient to shift the burden to appellant. The burden of overcoming appellees' showing was not met by appellant.

Accordingly, the judgment of the Customs Court, Second Division, Appellate Term, must be *affirmed.*

---

3. The presumption of correctness of the government's determination of United States value (based on allowances for profit and general expenses of the small importer) was over-

come by appellees' prima facie showing of allowances of the appellee having the largest share of the market.